**MARLIN & SALTZMAN**
Christina A. Humphrey (SBN 226326)
Leslie H. Joyner (SBN 262705)
29229 Canwood Street, Suite 208
Agoura Hills, California   91301
Telephone:    (818) 991-8080
Facsimile:    (818) 991-8081
chumphrey@marlinsaltzman.com
ljoyner@marlinsaltzman.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| SALVADOR ROBLES, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMTRAK LOGISTICS, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.  2:13-CV-00161-JAM-AC**<br>(Hon. John A. Mendez)<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## I.     INTRODUCTION

On July 9, 2014, in *Dilts v. Penske Logistics, LLC*, the US Court of Appeals for the Ninth Circuit reversed the district court's holding that the Federal Aviation Administration Authorization Act of 1994 (FAAAA) preempts California's meal and rest break laws as applied to motor carriers. The now overturned decision of the district court was the primary authority upon which Defendant Comtrak Logistics Inc.'s ("Comtrak" or "Defendant") based its Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). (*See* Motion at pp. 8, 15-18, 20). In *Dilts*, the court made it abundantly clear that normal background rules which apply to all employers across hundreds of industries are not preempted by the FAAAA. The claims set forth by Plaintiff in his First Amended Complaint involve just such laws; the laws do not "bind" Comtrak to specific prices, routes, or services, they do not "freeze into place" prices, routes, or services, and they do not determine the prices, routes, or services that Comtrak must provide. Based on the foregoing and for additional reasons set forth below, the Ninth Circuit's decision in *Dilts* mandates denial of Defendant's Motion here.

Presumably in light of this inescapable fact, Defendant devotes its Supplemental Brief ("Brief") to arguing the same false premise set forth in its Motion - that Plaintiff seeks to "forc[e] Comtrak to treat and classify owner-operators as employees,[1] rather than independent contractors…." (Brief 1:25-2:4). In fact, the only significant difference between Comtrak's motion to dismiss and its Brief, is Comtrak's reliance on **an additional false premise** that "during the stay of proceedings in this case, the United States Supreme Court issued a FAAAA Act preemption decision – *Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422 (2014)." (Brief 1:9-11).[2] However, nowhere in the Supreme Court's decision in Ginsberg does the court address preemption under the FAAAA; rather, it is addressed under the ADA. Moreover, in *Dan's City Used Cars, Inc. v. Pelkey* (133 S. Ct. 1769 (2013), which remains the Supreme Court's latest pronouncement on FAAAA preemption the Court explicitly stated that:

---

[1] On August 27, 2014 Defendant Comtrak Logistics, Inc. ("Defendant" or "Comtrak") began to hold meetings with its current truck drivers and unveiled the company's decision to convert the entire California fleet to an employer/employee model as opposed to an independent owner operator model.
[2] Defendant further claims that "*Northwest, Inc. v. Ginsberg*, is the Supreme Court's latest pronouncement on the FAAA Act preemption" and that in Ginsberg, "the Court reaffirmed the 'wide interpretive sweep' of FAAA Act preemption." (Brief 2:26-27; 3:27-28)..

1

> Although § 14501(c)(1) [of the FAAAA] otherwise tracks the language of the ADA's[3] air-carrier preemption provision, see *Rowe*, 552 U.S. at 370, the FAAAA formulation contains one conspicuous alteration—the addition of the words "with respect to the transportation of property." That phrase "massively limits the scope of preemption" ordered by the FAAAA. *City of Columbus v. Ours Garage & Wrecker Serv., Inc.* (*Ours Garage*), 536 U.S. 424, 122 S.Ct. 2226 (2002) (SCALIA, J., dissenting)

*Pelkey*, 133 S.Ct. at 1778-1779; see also *Dilts v. Penske Logistics, LLC*, 12-55705, 2014 WL 3291749 *4 (9th Cir. July 9, 2014). Therefore, in light of *Pelkey*, Defendant's attempt to conflate the scope of preemption under the ADA with that of the FAAAA must fail.

Comtrak also argues that the Ninth Circuit's recent decision in *Dilts* supports preemption of Plaintiff's claims herein. To support this argument, Comtrak plucks various statements from the decision and, out of context, distorts their meaning to support its premise. Adding greater irony, by its motion Comtrak seeks dismissal of all of Plaintiff's claims, which, among others, include the very meal and rest break laws the Ninth Circuit held were not preempted by the FAAAA.

Finally and falling back on its mischaracterization of Plaintiff's claims, Comtrak argues the California Supreme Court's recent decision in *Harris v. Pac Anchor Transportation, Inc.*, 174 Cal.Rptr.3d 626 (2014) is inapplicable and conflicts with the decisions of the Ninth Circuit in *American Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) (*ATA I*) and *American Trucking Ass'ns Inc. v. City of Los Angeles*, 660 F.3d 384 (9th Cir. 2011) (*ATA II*). Defendant's position is unsupportable. In contrast to the instant case, and also in contrast to *Pac Anchor*, in *ATA I* and *ATA II* the City of Los Angeles actually sought to compel motor carriers using its ports to switch from using independent contractor drivers to employee drivers. This, the Ninth Circuit held, was preempted by the FAAAA, because the City of Los Angeles was literally trying to dictate how the motor carriers structure their business model. *ATA II*, at p. 407. Contrary to Defendant's assertion, the court in *Pac Anchor* expressly agreed with the Ninth Circuit's holding, but distinguished the claims before it stating,

> [t]he defendants' assertion that the People may not prevent them from using independent contractors is correct, but its characterization of the People's UCL claim is not. Nothing in the People's UCL action would prevent defendants from using

---

[3] The Airline Deregulation Act of 1978 (ADA), 49 U.S. C. § 41713(b)(1).

2

> independent contractors. The People merely contend that if defendants pay individuals to drive their trucks, they must classify these drivers appropriately and comply with generally applicable labor and employment laws.

*Id.* at p. 636. Here, as in *Pac Anchor*, Plaintiff does not seek an Order from this Court to void Comtrak's contracts or to change its business model. There is no injunctive relief claim alleged in the First Amended Complaint (FAC). Nor does the complaint say anything about voiding contracts or changing business models. Accordingly, Pac Anchor is directly on point and completely in line with the Ninth Circuit's decision in *ATA I* and *ATA II*. Plaintiff seeks recovery for the time he and the class members have been treated as employees in the past, and thus misclassified as independent contractors. Thereafter, so long as the Defendant treats the drivers appropriately, as either independent contractors or employee drivers, it is free to fashion its own relationship with the drivers.

Based on the foregoing, and for reasons set forth below, Defendant's motion to dismiss should be denied.

## II.   DISCUSSION

### A.   Based on the Ninth Circuit's Decision in Dilts, Comtrak's Motion Must be Denied

In *Dilts*, the Ninth Circuit held that California meal and rest break laws are not related to prices, routes or services, and are therefore not preempted by the FAAAA. In reaching its holding, the court noted that meal and rest break laws "do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly." *Dilts*, at p. 7. Rather, the court stated, "[t]hey are 'broad law[s] applying to hundreds of different industries' with no other 'forbidden connection with prices[, routes,] and services.'" *Id*. The court further noted that "while motor carriers may have to take into account the meal and rest break requirements when allocating resources and scheduling routes—just as they must take into account state wage laws, or speed limits and weight restrictions,—the laws do not "bind" motor carriers to specific prices, routes, or services, Nor do they "freeze into place" prices, routes, or services or "determin[e] (to a significant degree) the [prices, routes, or] services that motor carriers will provide." *Id*. (internal citations omitted).

In addition, the Ninth Circuit stated that applying California's meal and rest break laws to motor carriers would not contribute to an impermissible "patchwork" of state-specific laws, defeating Congress' deregulatory objectives. The court explained:

> The fact that laws may differ from state to state is not, on its own, cause for FAAAA preemption. In the preemption provision, Congress was concerned only with those state laws that are significantly "related to" prices, routes, or services. A state law governing hours is, for the foregoing reasons, not "related to" prices, routes, or services and therefore does not contribute to "a patchwork of state *service-determining* laws, rules, and regulations."

*Id*. at p. *8 (citing *Rowe*, at p. 373).

Like the meal and rest break laws at issue in *Dilts*, Plaintiff's misclassification and related Labor Code claims are normal background rules applicable to all employers doing business in the state of California. As such, they do not "bind" Comtrak to any specific prices, routes, or services, nor do they "freeze into place" prices, routes, or services or determine the prices, routes, or services that Comtrak will provide. Finally, the state labor laws underlying Plaintiff's claims do not open the way for "a patchwork of state service-determining laws, rules, and regulations." *Dilts* at p. *8; *Pelkey*, 133 S.Ct at 1780 (citing *Rowe*, 552 U.S, at 373.) Accordingly, in light of the Ninth Circuit's decision in *Dilts*, there is simply no basis for Comtrak's contention that Plaintiff's misclassification and related labor code claims are preempted by the FAAAA.

### B. The Supreme Court's Decision in *Northwest, Inc. v. Ginsberg* Has No Bearing on This Case

Defendant's primary argument for preemption of Plaintiff's claims is based on the United States Supreme Court's decision in *Ginsberg*. Defendant asserts that in *Ginsberg*, "the Court reaffirmed the 'wide interpretive sweep' sweep [sic] of FAAA Act preemption" underscoring "the 'broad interpretation' it had given the preemption provision." (Brief at 3:27, 4:1-2). Defendant's position lacks merit. *Ginsberg* addresses the scope of preemption under the ADA, not the FAAAA. Although in the past courts have applied principles of preemption under the ADA in cases considering preemption under the FAAAA, in *Pelkey* the Supreme Court made clear that unlike the ADA, the scope of preemption under the FAAAA is "massively limited:"

> Although § 14501(c)(1) otherwise tracks the ADA's air-carrier preemption provision, see *Rowe,* 552 U.S., at 370, 128 S.Ct. 989, the FAAAA formulation contains one conspicuous alteration—the addition of the words "with respect to the transportation of property." That phrase <u>"massively limits the scope of preemption" ordered by the FAAAA</u>. *Ours Garage,* 536 U.S., at 449, 122 S.Ct. 2226 (SCALIA, J., dissenting).

*Pelkey*, at 1778 (emphasis added). In *Pelkey*, the court cautioned that with respect to the FAAAA, "the breadth of the words 'related to' does not mean the sky is the limit" nor should those words be read

"with an uncritical literalism." *Id*.

Nevertheless, Comtrak contends that *Ginsberg* is "directly on point" (Brief at 4:12). Yet review of the Supreme Court's decision therein reveals that *Ginsberg* is of little relevance to Plaintiff's claims here. The question before the court in *Ginsberg* was whether the plaintiff's claim for breach of the implied covenant of good faith and fair dealing under Minnesota common law imposed upon the defendant governmental commands beyond the scope of the parties' agreement and which related to airline rates, routes, or services. *Ginsberg* at pp. 1427-1428. In *Ginsberg*, the defendant terminated the plaintiff's membership in its frequent flyer program, based on a provision in the frequent flyer agreement that gave it sole discretion to determine whether a participant had abused the program. *Id*. at pp. 1427-1428. The plaintiff filed suit alleging, *inter alia*, that Northwest had violated the duty of good faith and fair dealing because it terminated his membership in a way that contravened his reasonable expectations. *Id*. In determining whether the plaintiff's implied covenant claim was preempted by the ADA, the court considered three questions:

- whether "the ADA's pre-emption provision applies only to legislation enacted by a state legislature and regulations issued by a state administrative agency but not to a common-law rule like the implied covenant of good faith and fair dealing;"
- whether the plaintiff's breach of implied covenant claim "relates to" "rates, routes, or services;" and
- whether the plaintiff's implied covenant claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook. *Ginsberg*, at pp. 1429-1431.

The Court encountered little difficulty in reaching its conclusion that "state common-law rules fall comfortably within the language of the ADA pre-emption provision.," noting that, by its terms, the ADA applies to "state 'law[s], regulation[s], or other provision[s] having the force and effect of law.'" *Id*. at p 1429 (citing 49 U.S.C. § 41713(b)(1). Citing *Wolens*, the court explained that "this phrase is most naturally read to 'refe[r] to binding standards of conduct that operate irrespective of any private agreement.'" *Id*. Next, the court considered whether the plaintiff's implied covenant claim was related to rates, routes, or services. The court concluded that the plaintiff's implied covenant claims related to both rates and routes through his claim because the plaintiff sought reinstatement of Northwest Inc.'s

5

frequent flier program so that he could "access the programs, valuable benefits, including flight upgrades, accumulated mileage, loyalty program status or benefits with other airlines and other advantages." *Id*. at p. 1431. The court therefore concluded that the plaintiff's implied covenant claim was connected to both rates and services because when mileage credits are redeemed for tickets and upgrades, the price of a particular ticket is either eliminated or reduced, and also because the program provides access to flights and to higher service categories. *Id*. at p 1431.

Finally, and in light of *Wolens*, the court in *Ginsberg* turned its attention to what it termed "the central issue" before it - whether the plaintiff's implied covenant claim was based on a state-imposed obligation or simply one that the parties voluntarily undertook. *Id*. In *Wolens,* the Court found that the ADA pre-empted the use of an Illinois consumer law to challenge an airline's devaluation of frequent flyer earned miles. *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715. Yet, the court found the ADA did not pre-empt breach of contract claims because "terms and conditions airlines offer and passengers accept … are privately ordered obligations and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [the ADA pre-emption provision]." *Ginsberg*, at p. 1429 (citing *Wolens*, at pp. 228–229). In *Ginsberg*, the court concluded that under Minnesota law the implied covenant must be regarded as a state-imposed obligation because in Minnesota, the covenant is something that parties cannot contract away. *Id*. at 1432.

Defendant asserts that *Ginsberg* "compels a finding of FAAA Act preemption" here, on the bare assertion that like in Ginsberg, Plaintiffs seeks to "enlarge the contractual obligations between the two parties." (Brief at 4:6-11). Defendant further claims that Plaintiff seeks to retroactively and prospectively void the agreements between the parties and force it to retroactively and prospectively classify its drivers as employees rather than independent contractors. (Brief at 6:16-20). This is simply not true. Plaintiff does not seek to enlarge the contractual obligations between the parties. As set forth in Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Opposition"):

/ / /

/ / /

> "**Plaintiff does <u>not</u> seek an Order from this Court to void Comtrak's contracts or to change its business model. <u>There is no injunctive relief claim alleged in the First Amended Complaint (FAC)</u>. Nor does the complaint say anything about voiding contracts or changing business models.**"

(Opposition 2:1-5) (emphasis in original). To be certain, Plaintiff's claims leave Defendant entirely free to operate any way it wants, including utilizing employee drivers or **legitimate** independent contractors. Defendant's hollow rhetoric does not warrant preemption of Plaintiff's claims under the FAAAA. Accordingly Defendant's motion should be denied.

### C. Defendant's Arguments Concerning *Dilts* Lack Merit

Defendant contends that the Ninth Circuit's decision in *Dilts* supports dismissal of Plaintiff's claims. To support its position, Defendant distorts the *Dilts* decision almost beyond recognition. For example, Defendant attempts to convince this Court that the Ninth Circuit's decision in *Dilts*, finding that California meal and rest break laws are not preempted by the FAAAA, was based at least in part on the facts that the drivers in that case drove only within California and therefore did not face a "patchwork" of laws. (Brief at 8:8-13 (citing *Dilts* at *8, n.2)). Contrary to Defendant's representation, the Ninth Circuit expressly held, in the very footnote cited by Defendant, that, "California's meal and rest break laws, **as generally applied to motor carriers**, are not preempted." *Dilts* at p. * 8, n.2 (emphasis added). Moreover, in the text directly preceding footnote two, the Ninth Circuit stated:

> applying California's meal and rest break laws to motor carriers would not contribute to an impermissible "patchwork" of state-specific laws, defeating Congress' deregulatory objectives. The fact that laws may differ from state to state is not, on its own, cause for FAAAA preemption. In the preemption provision, Congress was concerned only with those state laws that are significantly "related to" prices, routes, or services. A state law governing hours is, for the foregoing reasons, not "related to" prices, routes, or services and therefore does not contribute to "a patchwork of state *service-determining* laws, rules, and regulations." *Rowe,* 552 U.S. at 373, 128 S.Ct. 989 (emphasis added). It is instead more analogous to a state wage law, which may differ from the wage law adopted in neighboring states but nevertheless is permissible

*Id*. at p. 8. Therefore, Defendant's contention that principles of FAAAA preemption apply with more force to its trucking operations because "Comtrak is a nationwide motor carrier" (Brief at 8:10-13) lacks merit.

Defendant next asserts that the general description of the *Ginsberg* case set forth by the Ninth Circuit in the *Dilts* decision supports its position that Plaintiff's claims are preempted because therein the phrase "enlarge the contractual relationship" appears. *See Dilts* at p. * 6. Of greater relevance,

however, are the conclusions reached by the court and set forth in the *Dilts* decision immediately before and after the court's description of *Ginsberg*. First, the Ninth Circuit noted that "[l]aws are more likely to be preempted when they operate at the point where carriers provide services to customers at specific prices." *Id*. Here, Plaintiff's claims do not operate anywhere near the point where carriers provide services to customers at specific prices. Second, and immediately following its description of the Supreme Court's holding in *Ginsberg*, the court in Dilts stated "[o]n the other hand, generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide." *Id*. Here, Plaintiff's claims, including his meal and rest break claims, are generally applicable background regulations that are several steps removed from prices, routes, or services.

Defendant's final attempt to cast *Dilts* as somehow supporting preemption here is equally unavailing. Although Defendant's argument is hard to follow, it appears to contend that unlike the meal and rest break claims at issue in *Dilts*, Plaintiff claims (which ironically, include the same meal and rest break claims) "mandate how Comtrak provides services and to bind Comtrak to specific terms associated with those services." (Brief at p. 7:19-21). With additional argument, Defendant then reaches its sweeping and wholly unsupported conclusion that "[t]here could not be more mandating and binding, which even under *Dilts* is prohibited by the FAAA Act." (Brief at p. 7:25). Of course, Defendant does not explain how Plaintiff's claims "tell motor carriers what services they may or may not provide, either directly or indirectly or "mandat[e] motor carriers' use (or non-use) of particular prices, routes, or services." (Brief at p. 7:11-16 (citing *Dilts* at pp. *6-7)). The obvious reason for Defendant's oversight is because Plaintiff's claims are based on generally applicable labor laws, which place no requirements on motor carrier's use of particular prices, routes, or services. Accordingly, Defendant's motion should be denied.

### D.     Pac Anchor is Directly on Point

Comtrak attempts to distinguish *Pac Anchor* based on factual differences related to the determination whether the drivers therein were improperly misclassified as independent contractors. These facts, however, had no bearing on the California Supreme Court's preemption analysis and

likewise have no bearing here on Defendant's motion to dismiss based on FAAAA preemption. Rather, the issue here, as was the case in *Pac Anchor*, is whether Plaintiff's claims against Defendant for misclassifying him and its other drivers as independent contractors are preempted by the FAAAA.

In *Pac Anchor*, the People of the State of California ("People") specifically alleged, inter alia that by misclassifying their drivers as independent contractors the defendants obtained an unfair advantage over their competitors and deprived employees of benefits and protections to which they were entitled under California law in violation of the UCL. *Pac Anchor* at p. 629. The defendant, like Comtrak here, took the false position that the People sought to compel it to use only employee drivers. The court summarily dismissed defendant's attempt to recast the People's contention, stating:

> [t]he defendants' assertion that the People may not prevent them from using independent contractors is correct, but its characterization of the People's UCL claim is not. Nothing in the People's UCL action would prevent defendants from using independent contractors. The People merely contend that if defendants pay individuals to drive their trucks, they must classify these drivers appropriately and comply with generally applicable labor and employment laws.

*Id*. at p. 636. Accordingly the court held that the FAAAA did not preempt the People's UCL claim. *Id*. at p. 638. The same is true here.

Despite the similarity between the People's claims in *Pac Anchor* and Plaintiff's claims here, Defendant attempts to avoid application of the principles enunciated in Pac Anchor by arguing that *Pac Anchor* "irreconcilably conflicts" with Ninth Circuit precedent in *ATA I* and *ATA II* and the United States Supreme Court's decision in *American Trucking Associations, Inc. v. City of Los Angeles, California, et al.*, 133 S.Ct. 2096, 569 U.S. ___ (2013) (*ATA III*) (collectively, "*ATA* cases"). Defendant's contention is yet another desperate attempt to distort Plaintiff's claims into something they are not. Unlike Plaintiff's claims here, in the *ATA* cases the City of Los Angeles actually sought to require all motor carriers operating at its ports to cease use of all independent contractors and instead use only employees. *ATA I*, 559 F.3d at 1049-1050; *ATA II*, 660 F.3d at 407. Further, the court's decision in *Pac Anchor* follows the preemption principle enunciated in the *ATA* cases. As the text quoted above shows, the court in *Pac Anchor* acknowledged that had the People sought to prevent the defendant from using independent contractors the Peoples claims would have been preempted by the FAAAA. Here, as in *Pac Anchor*, Plaintiff's claims leave Comtrak entirely free to use employee drivers

9

or *legitimate* independent contractors, as they see fit. Therefore, unlike *Pac Anchor*, the *ATA* cases have little bearing on the preemption analysis here. Accordingly Defendant's motion should be denied.

### III.     CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

DATED:  September 3, 2014                                **MARLIN & SALTZMAN, LLP**


By:  /S/  Christina A. Humphrey
       Christina A. Humphrey, Esq.
       Leslie H. Joyner, Esq.
       Attorneys for Plaintiffs