**MARLIN & SALTZMAN, LLP**
Stanley D Saltzman, Esq. (SBN 90058)
29800 Agoura Road, Suite 210
Agoura Hills, California  91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081
Email: ssaltzman@marlinsaltzman.com

*Attorneys for Plaintiffs Salvador Robles,*
*Jorge Avalos and Jose Marquez, individually*
*on behalf of themselves and on behalf of*
*all others similarly situated*

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TENNESSEE - WESTERN DIVISION

| | |
|---|---|
| SALVADOR ROBLES; JORGE AVALOS, JOSE MARQUEZ, and CARLOS BARILLAS individually on behalf of themselves  and on behalf of all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>COMTRAK LOGISTICS, INC., a Delaware  corporation; HUB GROUP INC., a Delaware corporation; HUB GROUP TRUCKING INC., a Delaware corporation and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO. 2 :15-CV-02228-SHM-tmp**<br>(Assigned to Hon. Samuel H. Mays Jr.)<br><br>**CLASS ACTION**<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF;**<br>2. **DECLARATORY RELIEF;**<br>3. **REIMBURSEMENT OF BUSINESS EXPENSES;**<br>4. **RECOVERY OF UNPAID  MINIMUM WAGES;**<br>5. **RECOVERY OF UNPAID WAGES FOR TIME SPENT DRIVING ACTUAL MILES;**<br>6. **RECOVERY OF UNPAID WAGES AT THE DESIGNATED RATE;**<br>7. **WAGES BELOW THE DESIGNATED RATE FOR ACTUAL MILES DRIVEN;**<br>8. **QUANTUM MERUIT/UNJUST ENRICHMENT;**<br>9. **FAILURE TO PROVIDE MEAL PERIODS;**<br>10. **FAILURE TO PROVIDE REST PERIODS;**<br>11. **FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS;**<br>12. **FOR WAITING TIME PENALTIES (CALIFORNIA LABOR CODE §§ 201-203);**<br>13. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 ET. SEQ.**<br>14. **REIMBURSEMENT OF BUSINESS EXPENSES (PLAINTIFF ONLY);**<br>15. **RECOVERY OF UNPAID  MINIMUM WAGES (PLAINTIFF ONLY);** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**16. RECOVERY OF UNPAID WAGES FOR TIME SPENT DRIVING ACTUAL MILES (PLAINTIFF ONLY);**
**17. RECOVERY OF UNPAID WAGES AT THE DESIGNATED RATE (PLAINTIFF ONLY);**
**18. WAGES BELOW THE DESIGNATED RATE FOR ACTUAL MILES DRIVEN (PLAINTIFF ONLY);**
**19. QUANTUM MERUIT/UNJUST ENRICHMENT (PLAINTIFF ONLY);**
**20. FAILURE TO PROVIDE MEAL PERIODS (PLAINTIFF ONLY);**
**21. FAILURE TO PROVIDE REST PERIODS(PLAINTIFF ONLY);**
**22. FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS (PLAINTIFF ONLY);**
**23. FOR WAITING TIME PENALTIES (CALIFORNIA LABOR CODE §§ 201-203) (PLAINTIFF ONLY);**
**24. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 ET. SEQ. (PLAINTIFF ONLY)**

**DEMAND FOR JURY TRIAL**

Complaint Filed:     January 25, 2013
Trial Date:          None Set

**CASE NO. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

Plaintiff, SALVADOR ROBLES; JORGE AVALOS; JOSE MARQUEZ; and CARLOS BARILLAS on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs"), hereby file this Third Amended Complaint against Defendants COMTRAK LOGISTICS, INC., a Delaware corporation;  HUB GROUP INC., a Delaware corporation; HUB GROUP TRUCKING INC., a Delaware corporation, and DOES 1 to 10, inclusive (hereinafter collectively referred to as "Defendants").  Plaintiffs are informed and believe, and on the basis of that information and belief allege, as follows:

## I. NATURE OF THE CASE

1.   This putative class action is brought by Plaintiffs on behalf of Defendants' current and former California-based truck drivers, and asserts claims against Defendants for violations of the California Labor Code, Industrial Welfare Commission for the Transportation Industry wage order number nine ("California IWC Wage Order No. 9"), and the California Unfair Competition Law (Cal. *Bus. & Prof. Code* § 17200, *et seq.*) occurring in whole or in part in California.

2.   A four year statute of limitation applies to the UCL claim; shorter periods may apply to other claims.

3.   As defined more specifically below, the putative class consists of all current and former truck drivers who were (a)  classified by Defendants as "independent contractors;" (b) assigned to a Defendants operating terminal in California; and/or (c) residents of the State of California ("Drivers").

4.   This case was initially filed on January 13, 2013, by Plaintiff Salvador Robles in the United States District Court for the Eastern District of California and set forth twelve causes of action based on Defendants' unlawful practice of misclassifying their California-based truck drivers as independent contractors.

5.   By misclassifying their California-based truck drivers as independent contractors, Defendants sought to avoid various duties and obligations owed to employees under California law, including: the duty to indemnify employees for all expenses and losses necessarily incurred in connection with their employment (Cal. Labor Code § 2802; California IWC Wage Order No. 9, §§ 8-9.); the duty to pay California minimum wage for all hours worked (Cal. Labor Code §§

1182.12, 1194, 1194.2, 1197; California IWC Wage Order No. 9, § 4.); the duty to pay for all hours worked in accordance with the designated wage scale (Cal. Labor Code §§ 221, 223.); the duty to provide off-duty meal periods (Cal. Labor Code §§ 226.7, 512, 516; California IWC Wage Order No. 9, § 11.); the duty to provide rest periods (Cal. Labor Code §§ 226.7, 512, 516; California IWC Wage Order No. 9, § 12.); the duty to timely furnish accurate, itemized wage statements (Cal. Labor Code § 226.); the duty to pay wages due on termination (Cal. Labor Code §§ 201-203.); and other legal obligations.

6.   Plaintiffs are informed and believe that Defendants are major providers of full dray truckload transportation services, container storage deposits and logistic services. Defendants report being the largest intermodal company in the country. Plaintiffs are further informed and believe that Defendants have over 1,800 drivers in 24 different facilities across the United States. Defendants operate their trucking business throughout California. At all times mentioned in this Complaint, Defendants have employed hundreds of drivers at their Stockton, California and Ontario, California Terminals.

7.   Within four years preceding the filing of the initial complaint in this action and continuing up to in or around September 2014 ("Relevant Time Period"), although Defendants retained and exercised pervasive control over their freight transport operations and their truck drivers Defendants misclassified Drivers as independent contractors  By exercising such control over Drivers, Drivers were actually Defendants' employees under California law and were entitled to the protections afforded non-exempt employees under the California Labor Code.

8.   California's overtime provisions as set forth in California IWC Wage Order, No. 9, section 3, do not apply to Drivers  But for all other purposes, Drivers and are, in fact, non-exempt employees under California law entitled to the other protections afforded to non-exempt employees under the California Labor Code.

9.   Throughout the Relevant Time Period, and with certain defined exceptions, Defendants' compensation schemes, which included mileage-based and/or activity-based pay packages, did not fully compensate Drivers for all hours worked.

10. Throughout the Relevant Time Period, Defendants paid Drivers for driving time

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

through "Mileage Pay" as a piece-rate amount per mile driven.

11. Throughout the Relevant Time Period, Drivers also received "Load Pay," which involved a piece rate for completing a freight delivery.

12. At certain times, throughout the Relevant Time Period, Defendants also paid Drivers supplemental payments for certain defined activities, including (a) Detention time (e.g., waiting for customers, but only after two hours of waiting without pay and for no more than 8 hours); (b) Layover time (e.g. after waiting on customers in excess of twelve (12) hours and for a period not to exceed twenty-four (24) hours or if within 200 miles from pickup point, if wait exceeded 18 hours); (c) Loading/Unloading (e.g., physical handling of freight for customer); and (d) Driver Counts (upon verification, where Drivers were present during loading and count the cartons loaded).

13. Defendants did not, however, compensate Drivers for all remaining hours worked each day.  Most significantly, Defendants did not compensate Drivers for the majority of their time spent: (a) waiting on customers (e.g., the first 2 hours of Detention Time) (all such waiting time may be referred to herein as "Customer Waiting Time"); or (b) waiting on dispatch (e.g., waiting for instructions between assignments) (all such waiting time may be referred to herein as "Dispatch Waiting Time").  Customer Waiting Time and Dispatch Waiting Time are collectively referred to in this Complaint as "Waiting Time."

14. Moreover, throughout the Relevant Time Period, with limited defined exceptions, Defendants did not compensate Drivers for other routine non-driving work tasks including, but not limited to, inspecting vehicles, fueling vehicles, and completing daily paperwork (collectively referred to herein as "Common Unpaid Tasks"). Other examples of "Common Unpaid Tasks" including, but not limited to, looking for empty trailers and/or hooking/unhooking trailers and bobtailing.

15. Furthermore, throughout the Relevant Time Period and as a matter of policy and/or practice, Defendants did not pay Drivers wages for time spent driving actual miles in excess of pre-determined average mileage estimates, as determined according to the Household Movers Guide.  Defendants' average mileage estimates systematically denied Drivers compensation for

time spent driving actual miles driven, above the company abbreviated mileage estimates. Moreover, Defendants permitted Drivers to take alternative roads on behalf of the Company and its customers, but regardless, Defendants did not compensate for time spent driving additional miles (including, without limitation, bobtail miles to a base operating center at the end of a shift).

16. The failure to pay minimum wages to Drivers for all hours worked violated California Labor Code sections 1182.12, 1194 and 1197; California IWC Wage Order, No. 9, section 4; and the UCL.

17. Likewise, the failure to pay Drivers for each and every hour worked at designated rates violated California Labor Code sections 221 and 223; California IWC Wage Order, No. 9; and the UCL.

18. The failure to pay at least minimum wages to Drivers for each and every hour worked and the failure to pay for time spent driving in excess of mileage estimates in accordance with the designated rates, warrants liquidated damages under California Labor Code section 1194.2.

19. Further, throughout the Relevant Time Period and as a matter of policy or practice, Defendants also: (a) failed to record the actual hours worked by Drivers; (b) failed to itemize the total hours worked on wage statements furnished to Drivers; and (c) failed to properly maintain payroll records showing the actual hours worked and meal periods taken and missed each day by Drivers, all in violation of the California Labor Code section 226; California IWC Wage Order, number 9, section 7; and the UCL.

20. The failure to provide accurate hourly wage statements further warrants statutory penalties under California Labor Code section 226(e).

21. Also throughout the Relevant Time Period and as a matter of policy and/or practice, Defendants regularly:

      a.     Failed to provide Drivers with a first meal period of not less than thirty (30) minutes during which they were relieved of all duty before working more than five (5) hours;

      b.     Failed to provide Drivers with a second meal period of not less than thirty (30) minutes during which they were relieved of all duty before working more than

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

ten (10) hours per day; and

    c.    Failed to pay Drivers one hour of pay at their regular rate of compensation for each workday that a meal period was not provided.

22. Also throughout the Relevant Time Period and as a matter of policy and/or practice, Defendants regularly:

    a.  Failed to provide paid rest periods of ten (10) minutes during which Drivers were relieved of all duty for each four (4) hours of work; and

    b.  Failed to pay Drivers one (1) hour of pay at their regular rate of compensation for each workday that a rest period was not permitted.

23. The failure to permit and provide meal periods and rest periods as described herein violated California Labor Code sections 226.7, 512 and 516; California IWC Wage Order , number 9, sections 11 and 12; and the UCL.

24. Further, throughout the Relevant Time Period and as a matter of policy and/or practice, Defendant failed to indemnify Drivers for employment-related expenses including, but not limited to, operational costs associated with the vehicles, including, among others, fuel, maintenance, repairs, truck payments for use of truck, quarterly inspections, tolls, ferry charges, late delivery fees, cargo loss or damage, licensing and liability and other insurance covering work place injuries. Defendants also took deductions from Drivers' compensation to cover some or all of those expenses

25. Also throughout the Relevant Time Period and as a matter of policy and/or practice, Defendants regularly failed to indemnify Drivers for all necessary expenditures and losses incurred by Drivers in direct consequence of the discharge of their duties and in obedience to the direction of Defendants. (Cal. Lab. Code § 2802.) Defendants unlawfully took deductions from Drivers' compensation to cover numerous ordinary business expenses of Defendants, as described above.

26. The failure to indemnify Drivers from such losses and expenditures violated California Labor Code section 2802; California IWC Wage Order, number 9, section 8, and the UCL and entitles Drivers to reimbursement of their necessary expenditures, plus interest, reasonable costs and attorneys' fees and costs under California Labor Code section 2802(c).

27. Drivers seek reimbursement for business expenses unlawfully deducted from their compensation according to proof, plus interest, penalties, attorneys' fees, and costs against Defendants as provided by the California Labor Code and/or other statutes.

28. Also throughout the Relevant Time Period and as a matter of policy and/or practice, Defendants regularly failed to pay all compensation due and owing to Drivers upon termination of employment, as required by California Labor Code sections 201 and 202.  As a result, Defendants are liable for accrued wages due upon termination, and waiting time penalties owed in accordance with California Labor Code section 203.

29. In this putative class action, Plaintiffs seek, for themselves and for all others similarly situated, declaratory relief, damages and penalties for violations of the California Labor Code and applicable California IWC Wage Orders, and restitution of all sums wrongfully obtained by Defendants in violation of the UCL.

30. Beginning on or around August 27, 2014, and as set forth in greater detail below, Defendants, while refusing to provide the class list to Plaintiffs, began holding meetings with their California-based Drivers in California at hotel meeting rooms located nearby Defendants' Stockton and Ontario Terminals. Upon arriving at the meetings, Drivers were told that, based on the legal climate in California, they were being converted to employee drivers while simultaneously being informed of settlement offers for a case most of them had never before heard of, and presented with prepared settlement checks to pick up immediately - as soon as they signed releases of their claims in this litigation which were also simultaneously presented to them. On information and belief, Plaintiffs allege that by the end of the first week, over ninety percent of the drivers accepted settlement offers from Defendants, most of which were accepted on the first day the offers were presented to them.

31. Plaintiffs Jorge Avalos and Jose Marquez are two individuals who accepted the money and signed a release.  As set forth hereafter, they assert on behalf of a sub-class of individuals who signed releases and accepted money, that the process was coercive, unfair, and unjust and that the releases they signed should be invalidated, and that the money they received be treated as a credit against any ultimate recovery they may have in this case.

Case No. 2:15-cv-002228-SHM-tmp
THIRD AMENDED COMPLAINT

32. In addition to the foregoing, Plaintiff Salvador Robles asserts eleven (11) causes of action against Defendants based on Defendants' violation of the California Labor Code, California IWC Wage Order No. 9 and the UCL for the time he worked for Defendants and was classified as an employee driver. Similar to when to Plaintiff Salvador Robles had been classified by Defendants as an independent contractor, when he was reclassified by Defendants as an employee, Plaintiff Salvador Robles was likewise not compensated for all hours worked including but not limited to Waiting Time and time spent performing Common Unpaid Tasks and/or actual miles driven; was regularly denied meal and rest periods; was not reimbursed for employment related expenses; was not paid all wages due and owing upon termination of employment. Accordingly, Plaintiff Salvador Robles seeks, on behalf of himself individually, damages and penalties for Defendants' violations of the California Labor Code and California IWC Wage Order No. 9 and payment of restitution of all sums wrongfully obtained by Defendants in violation of the UCL, for the time period during which Plaintiff Salvador Robles worked for Defendants and was classified as an employee.

## II. PARTIES

### A. Plaintiffs

#### (1) Plaintiff Salvador Robles

33. Plaintiff, Salvador Robles, is an individual over the age of eighteen (18) and is now, and at all relevant times mentioned in this Complaint was, a resident and domiciliary of the State of California. During the relevant time period, Robles worked for Defendants from their terminal based in Stockton, California, and was misclassified as an independent contractor. During the relevant time period, Robles also worked for Defendants from Defendants' Stockton terminal and was classified as an employee. Plaintiff currently resides in Riverside County, California.

34. Plaintiff, Salvador Robles seeks damages including, but not limited to, wages, restitution for unpaid wages, penalties, reimbursement and other compensation from Defendants for the time period Plaintiff, Salvador Robles, worked for Defendants and was misclassified as an independent contractor because, like the other members of the putative classes, Defendants:

a. Misclassified Plaintiff, Salvador Robles, as an "independent contractor;"

b.  Failed to reimburse Plaintiff, Salvador Robles, for business expenses;

c.  Failed to timely pay Plaintiff, Salvador Robles, minimum wages or designated rates for all hours worked and/or miles driven;

d.  Failed to provide Plaintiff, Salvador Robles, proper meal and rest periods or premium wages in lieu of the same;

e.  Failed to pay for time spent on rest periods;

f.  Failed to furnish Plaintiff, Salvador Robles, with accurate itemized wage statements;

g.  Failed to timely pay Plaintiff, Salvador Robles, all wages due to him at the time of his termination from employment; and/or

h.  Subjected Plaintiff, Salvador Robles, to unfair business practices within the meaning of California Business and Professions Code, section 17200 *et. seq.*

35. In addition, Plaintiff, Salvador Robles, seeks, on behalf of himself, individually, damages including, but not limited to, wages, restitution for unpaid wages, penalties, reimbursement and other compensation from Defendants for the time period he worked for Defendants and was classified as an employee because Defendants:

a.  Failed to reimburse Plaintiff Salvador Robles, Individually, for business expenses;

b.  Failed to timely pay Plaintiff Salvador Robles, Individually, minimum wages or designated rates for all hours worked and/or miles driven;

c.  Failed to provide Plaintiff Salvador Robles, Individually, proper meal and rest periods or premium wages in lieu of the same;

d.  Failed to pay for time spent on rest periods;

e.  Failed to furnish Plaintiff Salvador Robles, Individually, with accurate itemized wage statements;

f.  Failed to timely pay Plaintiff Salvador Robles, Individually, all wages due to him at the time of his termination from employment; and/or

g.  Subjected Plaintiff Salvador Robles, Individually, to unfair business practices within the meaning of California Bus. and Professions Code, section 17200 *et. seq.*

**(2)**      <u>Plaintiff Jorge Avalos</u>

36. Plaintiff Jorge Avalos is an individual over the age of eighteen (18) and is now, and/or at all relevant times mentioned in this Complaint was, a resident and domiciliary of the State of California. Within four years prior to the filing of this Complaint, Plaintiff Jorge Avalos worked for Defendants as a truck driver; was assigned to Defendants' Ontario, California terminal and was misclassified by Defendants as an independent contractor. In or around August 2014, Plaintiff Jorge Avalos was offered and accepted money from Defendants and signed a release such as the one attached hereto as Exhibit "A.". Jorge Avalos currently resides in Bell Gardens, California.

37. Plaintiff, Jorge Avalos seeks damages including, but not limited to, wages, restitution for unpaid wages, penalties, reimbursement and other compensation from Defendants for the time period Plaintiff Jorge Avalos worked for Defendants and was misclassified as an independent contractor because, like the other members of the putative classes, Defendants:

     a.    Misclassified Plaintiff Jorge Avalos as an "independent contractor;"

     b.    Failed to reimburse Plaintiff Jorge Avalos for business expenses;

     c.    Failed to timely pay Plaintiff Jorge Avalos minimum wages or designated rates for all hours worked and/or miles driven;

     d.    Failed to provide Plaintiff Jorge Avalos proper meal and rest periods or premium wages in lieu of the same;

     e.    Failed to pay for time spent on rest periods;

     f.    Failed to furnish Plaintiff Jorge Avalos with accurate itemized wage statements;

     g.    Failed to timely pay Plaintiff Jorge Avalos all wages due to him at the time of his termination from employment; and/or

     h.    Subjected Plaintiff Jorge Avalos to unfair business practices within the meaning of California Business and Professions Code, section 17200 *et. seq*.

**(3)**      <u>Plaintiff Jose Marquez</u>

38. Plaintiff Jose Marquez is an individual over the age of eighteen (18) and is now, and/or at all relevant times mentioned in this Complaint was, a resident and domiciliary of the State of California. During the relevant time period, Plaintiff Marquez worked for Defendants from their

terminal based in Ontario, California, and was misclassified as an independent contractor. Plaintiff Marquez currently resides in Moreno Valley, California.

39. Plaintiff, Jose Marquez seeks damages including, but not limited to, wages, restitution for unpaid wages, penalties, reimbursement and other compensation from Defendants for the time period Plaintiff Marquez worked for Defendants and was misclassified as an independent contractor because, like the other members of the putative classes, Defendants:

    a.  Misclassified Plaintiff Marquez as an "independent contractor;"

    b.  Failed to reimburse Plaintiff Marquez for business expenses;

    c.  Failed to timely pay Plaintiff Marquez minimum wages or designated rates for all hours worked and/or miles driven;

    d.  Failed to provide Plaintiff Marquez proper meal and rest periods or premium wages in lieu of the same;

    e.  Failed to pay for time spent on rest periods;

    f.  Failed to furnish Plaintiff Marquez with accurate itemized wage statements;

    g.  Failed to timely pay Plaintiff Marquez all wages due to him at the time of his termination from employment; and/or

    h.  Subjected Plaintiff Marquez to unfair business practices within the meaning of California Business and Professions Code, section 17200 *et. seq.*

**(4)**    **Plaintiff Carlos Barillas**

40. Plaintiff Carlos Barillas is an individual over the age of eighteen (18) and is now, and/or at all relevant times mentioned in this Complaint was, a resident and domiciliary of the State of California. During the relevant time period, Plaintiff Barillas worked for Defendants from their terminal based in Ontario, California, and was misclassified as an independent contractor. Plaintiff Barillas currently resides in Los Angeles, California.

41. Plaintiff, Carlos Barillas seeks damages including, but not limited to, wages, restitution for unpaid wages, penalties, reimbursement and other compensation from Defendants for the time period Plaintiff Barillas worked for Defendants and was misclassified as an independent contractor because, like the other members of the putative classes, Defendants:

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

a. Misclassified Plaintiff Barillas as an "independent contractor;"

b. Failed to reimburse Plaintiff Barillas for business expenses;

c. Failed to timely pay Plaintiff Barillas minimum wages or designated rates for all hours worked and/or miles driven;

d. Failed to provide Plaintiff Barillas proper meal and rest periods or premium wages in lieu of the same;

e. Failed to pay for time spent on rest periods;

f. Failed to furnish Plaintiff Barillas with accurate itemized wage statements;

g. Failed to timely pay Plaintiff Barillas all wages due to him at the time of his termination from employment; and/or

h. Subjected Plaintiff Barillas to unfair business practices within the meaning of California Business and Professions Code, section 17200 *et. seq.*

**B.  Interested Putative Class Members**

42. The following individuals are over the age of eighteen (18) and are now, and/or at all relevant times mentioned in this Complaint were, residents of the State of California and/or were assigned to Defendants Stockton or Ontario, California terminals.  These individuals are represented by Marlin & Saltzman as to the claims asserted in this action.

|     | **NAME** | **CURRENT RESIDENCE** |
| --- | --- | --- |
| 1. | David Aceves | Stockton, California. |
| 2. | Manuel Acuna | Modesto, California. |
| 3. | Andres Adame | Rialto, California. |
| 4. | Adan Aguilar | La Puente, California. |
| 5. | Agustin Aguilera | Victorville, California. |
| 6. | Ruben Alderete | Moreno Valley, California. |
| 7. | Edgar Alejo | San Bernardino, California. |
| 8. | Jose Alemain | Bakersfield, California. |
| 9. | Alfredo Alvarado | Rialto, California. |
| 10. | Edwin Alvarado | Los Angeles, California. |
| 11. | Raul Alvarado | Los Angeles, California. |
| 12. | Arturo Alvarez | Los Angeles, California. |
| 13. | Salvador Alvarez | Chino, California. |

Case No. 2:15-cv-002228-SHM-tmp
**THIRD AMENDED COMPLAINT**

| | NAME | CURRENT RESIDENCE |
|---|---|---|
| 14. | Manuel Amaya | Rancho Cucamonga, California. |
| 15. | Jose Andrade | Los Angeles, California. |
| 16. | Adams Dom Aoodtama | North Highlands, California. |
| 17. | Katia Argumedo | Fontana, California. |
| 18. | Jaime Arias | Baldwin Park, California. |
| 19. | Rolando Avalos | Perris, California. |
| 20. | Isidro Aviles | South Gate, California. |
| 21. | Carlos Barillas | Los Angeles, California. |
| 22. | Jose Barillas | North Hollywood, California. |
| 23. | Ignacio Barragan | Los Angeles, California. |
| 24. | Salvador Barragan | Commerce, California. |
| 25. | Jesus Barrera | Rancho Cucamonga, California. |
| 26. | Richard Barrera | Delhi, California. |
| 27. | Hector Bautista | Northridge, California. |
| 28. | Julio Bautista | Los Angeles, California. |
| 29. | Sandeep Behniwal | Stockton, California. |
| 30. | Adalberto Bernal | Los Angeles, California. |
| 31. | Franklin Blanco | Pasadena, California. |
| 32. | Santos Bolanos | Ontario, California. |
| 33. | Jose Bonilla | Glendale, California. |
| 34. | Santos Bonilla | Los Angeles, California. |
| 35. | Marlon Bradley | Huntington Beach, California. |
| 36. | Manpreet Brar | Elk Grove, California. |
| 37. | Karron Browning | Elk Grove, California. |
| 38. | Gonzalo Cabrera | West Sacramento, California. |
| 39. | Noel Caceres | Los Angeles, California. |
| 40. | Rodolfo Caquioa | Roseville, California. |
| 41. | Roberto Calderon | Willows, California. |
| 42. | Victor Calero | Downey, California. |
| 43. | Aaron Campos | San Bernardino, California. |
| 44. | Carlos Campos | El Monte, California. |
| 45. | Alfred Cantaloube | Salida, California. |
| 46. | Carlos Carlos | Moreno Valley, California. |
| 47. | Jorge Carlos | Moreno Valley, California. |
| 48. | Jose Carrillo | Upland, California. |
| 49. | Rodolfo Carrillo | Fontana, California. |
| 50. | Darnell Carter | Stockton, California. |
| 51. | Juan Castillo | Lynwood, California. |
| 52. | Juan Carlos Castillo | Santa Ana, California. |
| 53. | Oscar Castillo | Los Angeles, California. |
| 54. | Alvaro Castro | Perris, California. |
| 55. | Conrado Castro | Riverside, California. |
| 56. | Johnny Castro | Fontana, California. |

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

| | **NAME** | **CURRENT RESIDENCE** |
|---|---|---|
| 57. | Gilberto Cerna | San Jacinto, California. |
| 58. | Antonio Cervantes | Los Angeles, California. |
| 59. | Salvador Cervantes | Fontana, California. |
| 60. | Hardip Chahal | Stockton, California. |
| 61. | Carlos Chavez | South Gate, California. |
| 62. | Gurwinder Cheema | Tulare, California. |
| 63. | Syard Chitpasong | Star, Idaho. |
| 64. | Troy Chitpasong | Star, Idaho. |
| 65. | Phat Chum | Stockton, California. |
| 66. | Alejandro Cisneros | Compton, California. |
| 67. | Ramon Contreras | Victorville, California. |
| 68. | Victor Coreas | Sun Valley, California. |
| 69. | Jose Cornejo | Norwalk, California. |
| 70. | Tony Costa | Turlock, California. |
| 71. | Victor Coto | Reseda, California. |
| 72. | Fernando Covarrubias | Alhambra, California. |
| 73. | Nestor Cubangbang | Stockton, California. |
| 74. | Romeo Cubangbang | Stockton, California. |
| 75. | Andrew D'Leon | Upland, California. |
| 76. | Francisco Delgadillo | Rialto, California. |
| 77. | Kulwinder Deol | Stockton, California. |
| 78. | Sinxay Detleuxay | Stockton, California. |
| 79. | Pardip Dhillon | Fremont, California. |
| 80. | Jose Diaz | Azusa, California. |
| 81. | Salvador Diaz | Chino, California. |
| 82. | Sergio Diaz Garcia | Fontana, California. |
| 83. | Victor Diaz | Fontana, California. |
| 84. | Abel Dominguez | Moreno Valley, California. |
| 85. | Arnulfo Dongon | Stockton, California. |
| 86. | Soukthavy Dongsavanh | Stockton, California. |
| 87. | Jasvir Dosanjh | Antelope, California. |
| 88. | Santokh Dosanjh | Antelope, California. |
| 89. | Tehal Dosanjh | Antelope, California. |
| 90. | Sam En | Sacramento, California. |
| 91. | Samol En | Sacramento, California. |
| 92. | Savuth Anthony En | Modesto, California. |
| 93. | Yen En | Manteca, California. |
| 94. | Yong En | Modesto, California. |
| 95. | Yun En | Modesto, California. |
| 96. | William Ernest | Merced, California. |
| 97. | Raul Esparza | San Bernardino, California. |
| 98. | Edwin Espel | Garden Grove, California. |
| 99. | Carlos Espinosa | Compton, California. |

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

| | NAME | CURRENT RESIDENCE |
|---|---|---|
| 100. | Lawrence Estrada | Los Angeles, California. |
| 101. | Michael Farley | Stockton, California. |
| 102. | Ignacio Fernandez | San Bernardino, California. |
| 103. | Joe Flores | Carson, California. |
| 104. | Jose Flores-Santiago | Montebello, California. |
| 105. | Jose Luis Flores | El Monte, California. |
| 106. | Jose Luis Flores Robles | Victorville, California. |
| 107. | Rigoberto Flores-Perez | Compton, California. |
| 108. | Jose Fonseca | Van Nuys, California. |
| 109. | Felipe Frausto | Ontario, California. |
| 110. | Francisco Fuentes | Montebello, California. |
| 111. | Carlos Gaete | Upland, California. |
| 112. | Ramon Galamay, Jr. | Stockton, California. |
| 113. | Francisco Gallardo | El Monte, California. |
| 114. | Mario Gallegos | Rialto, California. |
| 115. | Moises Galvan | Whittier, California. |
| 116. | Manlio Garcia | Compton, California. |
| 117. | Maria Rosa Garcia | San Bernardino, California. |
| 118. | Rubin Garcia | Los Angeles, California. |
| 119. | Thomas Garcia | Pomona, California. |
| 120. | Mario Giron | North Hollywood, California. |
| 121. | Sergio Giron | Mira Loma, California. |
| 122. | Francisco Gomez | Los Angeles, California. |
| 123. | Nick Gonzales | Redlands, California. |
| 124. | Victor Gonzales | Apple Valley, California. |
| 125. | David Gonzalez | Fontana, California. |
| 126. | Jose Gonzalez | Los Angeles, California. |
| 127. | Virgilio Gonzalez | Ontario, California. |
| 128. | Donald Gooden | Los Angeles, California. |
| 129. | Manmohan Grewal | Sacramento, California. |
| 130. | Walter Guadron | Panorama City, California. |
| 131. | Alex Guira | Stockton, California. |
| 132. | Guillermo Gutierrez | El Monte, California. |
| 133. | Joel Guzman | North Hollywood, California. |
| 134. | Miguel Hatch | Los Angeles, California. |
| 135. | Watha Hem | Modesto, California. |
| 136. | Arturo Hernandez | Pomona, California. |
| 137. | Esteban Hernandez | Montebello, California. |
| 138. | John Hernandez | Montebello, California. |
| 139. | Luciana Hernandez | South Gate, California |
| 140. | Victor Hernandez | Covina, California. |
| 141. | Carlos Herrera | Bloomington, California. |
| 142. | Martin Herrera | Adelanto, California. |

| | **NAME** | **CURRENT RESIDENCE** |
|---|---|---|
| 143. | Donald Hodge | Oak Hills, California. |
| 144. | Cristian Islas | Moreno Valley, California. |
| 145. | Jaime Jimenez | West Covina, California. |
| 146. | Daione Johnson | Victorville, California. |
| 147. | Grover Johnson | Manteca, California. |
| 148. | Sasa Joncie | Tracy, California. |
| 149. | Ljubisa Jovicic | Chambersburg, PA. |
| 150. | Jaime Juarez | Moreno Valley, California. |
| 151. | Rajiv Kaushal | Manteca, California. |
| 152. | Amphone Keokot | Stockton, California. |
| 153. | Vijay Kumar | Lathrop, California. |
| 154. | Carlos Lasso | Pico Rivera, California. |
| 155. | Edgar Leal | Los Angeles, California. |
| 156. | Miguel Angel Leiva | Los Angeles, California. |
| 157. | Alan Lemos | Montclair, California. |
| 158. | Jose Rolando Lemus Cruz | Fontana, California. |
| 159. | Manolo Lezama | Los Angeles, California. |
| 160. | Hugo Lopez | San Bernardino, California. |
| 161. | Joaquin Lopez | Ceres, California. |
| 162. | Jacobo Lopez | Fontana, California. |
| 163. | Jose Lopez | Baldwin Park, California. |
| 164. | Magdaleno Lopez | Los Angeles, California. |
| 165. | Manuel Lopez | Rialto, California. |
| 166. | Roberto Lopez | Baldwin Park, California. |
| 167. | Mao Lourn | Stockton, California. |
| 168. | David Luna-Murillo | Fontana, California. |
| 169. | Gurbaz Mandair | Chowchilla, California. |
| 170. | Gustavo Marin | Ontario, California. |
| 171. | Frank Martinez | Los Angeles, California. |
| 172. | Francisco Martinez | Alhambra, California. |
| 173. | Hector Martinez | Bloomington, California. |
| 174. | Henry Martinez | Los Angeles, California. |
| 175. | Jose Martinez | Sun City, California. |
| 176. | Jose A. Martinez | Los Angeles, California. |
| 177. | Julio Martinez | Los Angeles, California. |
| 178. | Ramon Martinez | La Mirada, California. |
| 179. | Hector Matta | Bell, California. |
| 180. | Jose Meave | Bell, California. |
| 181. | Naveen Mehta | Yuba, California. |
| 182. | Rafael Mejia | Lynwood, California. |
| 183. | William Melara | Los Angeles, California. |
| 184. | Vijay Men | Stockton, California. |
| 185. | Antonio Mendez | Stockton, California. |

15

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

| | **NAME** | **CURRENT RESIDENCE** |
|---|---|---|
| 186. | Fernando Mendez-Dominguez | Highlands, California. |
| 187. | Ervin Midence | Bell Gardens, California. |
| 188. | Jose Miranda | Fontana, California. |
| 189. | Tomasz Miziolek | Sherman Oaks, California. |
| 190. | Hector Mojica | Azusa, California. |
| 191. | Elmer Monroy | Stockton, California. |
| 192. | Floridalma Monroy | Fontana, California. |
| 193. | Sigfredo Monroy | Fontana, California. |
| 194. | Luis Alberto Mora | Paramount, California. |
| 195. | Rafael Morales | Fontana, California. |
| 196. | Humberto Moreno | Highland, California. |
| 197. | Israel Moreno | Fontana, California. |
| 198. | Rene Moreno | Riverside, California. |
| 199. | Reynaldo Moreno | Glendora, California. |
| 200. | Rufino Munoz | Modesto, California. |
| 201. | Surrell Nak | Stockton, California. |
| 202. | Marvin Nash | Stockton, California. |
| 203. | Edgar Navarrete | Hesperia, California. |
| 204. | Elmer Navarrete | Los Angeles, California. |
| 205. | Jose Navas | Downey, California. |
| 206. | Johnny Nguyen | Westminster, California. |
| 207. | Robert North | Colton, California. |
| 208. | Adam Nunez | Chula Vista, California. |
| 209. | Dewey Obtinalla | Stockton, California. |
| 210. | Santos Olivar | Moreno Valley, California. |
| 211. | Israel Olivares | Azusa, California. |
| 212. | Roberto Ortiz | Fontana, California. |
| 213. | Oscar Osorio | Norwalk, California. |
| 214. | Edgar Ovando | El Monte, California. |
| 215. | Antonio Palacios | Hayward, California. |
| 216. | David Palacios | Arlington, Texas. |
| 217. | Morris Palma | North Hollywood, California. |
| 218. | Robert Palmer | San Bernardino, California. |
| 219. | Carlos Pamal | Los Angeles, California. |
| 220. | Parminder Parhar | Manteca, California. |
| 221. | Ricardo Pedraza | Riverside, California. |
| 222. | Fernando Pedroza | Ontario, California. |
| 223. | Juan Pena | Ontario, California. |
| 224. | Amner Pereira | Los Angeles, California. |
| 225. | Francisco Perez | Ontario, California. |
| 226. | Raul Perez | Rialto, California. |
| 227. | Rene Perez | Fontana, California. |
| 228. | Tien Phan | Manteca, California. |

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

| | **NAME** | **CURRENT RESIDENCE** |
|---|---|---|
| 229. | Tik Phanvongsa | Stockton, California. |
| 230. | John Phimpha | Stockton, California. |
| 231. | Khorn Phimpha | Stockton, California. |
| 232. | Sorn Phimpha | Stockton, California. |
| 233. | Antonio Pichardo | Los Angeles, California. |
| 234. | Robert Pillow | Killdeer, North Dakota. |
| 235. | Alfredo Pineda | Inglewood, California. |
| 236. | Saul Pineda | Ontario, California. |
| 237. | Ignacio Pinon | Fontana, California. |
| 238. | Elmer Pontillo | Los Angeles, California. |
| 239. | Julio Portillo | Los Angeles, California. |
| 240. | Nelly Posada | Los Angeles, California. |
| 241. | Sonny Praaphai | Stockton, California. |
| 242. | Ivica Rajovie | Los Angeles, California. |
| 243. | Eduardo Ramirez | Modesto, California. |
| 244. | Juan Ramirez | Los Angeles, California. |
| 245. | Pedro Ramos | Perris, California. |
| 246. | Juan Rangel | Baldwin Park, California. |
| 247. | Edwin Reyes Guevara | Los Angeles, California. |
| 248. | Leonel Reyes | Fontana, California. |
| 249. | Ramon Reyes | Ontario, California. |
| 250. | Shuan Riggs | Gardena, California. |
| 251. | Oscar Rios | Los Angeles, California. |
| 252. | Lorenzo Rivas | Riverside, California. |
| 253. | Joaquin Rivera | Riverside, California. |
| 254. | Jose Manuel Rivera | Whittier, California. |
| 255. | Juan Rivera | Moreno Valley, California. |
| 256. | Eliud Rodriguez | Bell Gardens, California. |
| 257. | Fernando Rodriguez | Rialto, California. |
| 258. | Francisco Rodriguez | San Bernardino, California. |
| 259. | Gabriel Rodriguez | Hawthorne, California. |
| 260. | Jorge Rodriguez | South El Monte, California. |
| 261. | Jose Rodriguez | Bell, California. |
| 262. | Jose Gustavo Rodriguez | Los Angeles, California. |
| 263. | Jose Luis Rodriguez | Ontario, California. |
| 264. | Miguel Rodriguez | Los Angeles, California. |
| 265. | Pedro Rodriguez | Huntington Park, California. |
| 266. | Rodney Rodriguez | Manteca, California. |
| 267. | Luz Maria Romero | Rialto, California. |
| 268. | Justus Rooters | Converse, Texas. |
| 269. | Octavio Ruiz | San Bernardino, California. |
| 270. | William Ruiz | Hacienda Heights, California. |
| 271. | Sahat Sagala | San Bernardino, California. |

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

| | NAME | CURRENT RESIDENCE |
|---|---|---|
| 272. | Hugo  Salcedo | Whittier, California. |
| 273. | Sergio Vinicio Salguero De Paz | Los Angeles, California. |
| 274. | Robert Salinas | Ceres, California. |
| 275. | Manvir Samdhu | Lathrop, California. |
| 276. | Roselyn Samdhu | Lathrop, California. |
| 277. | Efren Sanchez | Fontana, California. |
| 278. | Jose Sanchez | Los Angeles, California. |
| 279. | Julian Sanchez | La Puente, California. |
| 280. | Ramon Sanchez | Corona, California. |
| 281. | Salvador Sanchez-Santiago | Fontana, California. |
| 282. | Andrew Sandoval | Fontana, California. |
| 283. | Edison Sandoval | Bell, California. |
| 284. | Jaswant Sangha | Elk Grove, California. |
| 285. | Gary Santeliz | Los Angeles, California. |
| 286. | Pov Sem | Modesto, California. |
| 287. | Alejandro Serrano | Bloomington, California. |
| 288. | Jesus Serrano | Moreno Valley, California. |
| 289. | Pablo Shul | Bloomington, California. |
| 290. | Baldev Singh | Tracy, California. |
| 291. | Balkar Singh | Union City, California. |
| 292. | Baltit Singh | Stockton, California. |
| 293. | Dalwinder Singh | Manteca, California. |
| 294. | Gurmail Singh | Sacramento, California. |
| 295. | Harjinder Singh | Plumas Lake, California. |
| 296. | Jag Singh | Stockton, California. |
| 297. | Lakwinder Singh | Fremont, California. |
| 298. | Onkar Singh | Manteca, California. |
| 299. | Parminder Singh | Manteca, California. |
| 300. | Rajvir Singh | Stockton, California. |
| 301. | Reyhral Singh | Stockton, California. |
| 302. | Taja Singh | Stockton, California. |
| 303. | Gurbax Singhmandair | Chowchilla, California. |
| 304. | Jose Tamayo | La Puente, California. |
| 305. | Francisco Tapia | Perris, California. |
| 306. | Aleksandar Tar | San Marcos, California. |
| 307. | Milos Tar | La Jolla, California. |
| 308. | Fredrick Teigag | San Bernardino, California. |
| 309. | Jose Tejada Jr. | Pico Rivera, California. |
| 310. | Saengphet Thongbangbay | Stockton, California. |
| 311. | Juan Jose Tremino | Los Angeles, California. |
| 312. | Eric Trice | Monte Claire, California. |
| 313. | Linh Truong | Stockton, California. |
| 314. | Daniel Valadez | Hesperia, California. |

18

| | **NAME** | **CURRENT RESIDENCE** |
|---|---|---|
| 315. | Rodrigo Valdovinos | Fullerton, California. |
| 316. | Jeremiah Valenzuela | Stockton, California. |
| 317. | Julian Valenzuela | San Bernardino, California. |
| 318. | Jorge Vasquez | Riverside, California. |
| 319. | Hector Velazquez | Downey, California. |
| 320. | Luis Alejandro Vigueras | Diamond Bar, California. |
| 321. | Rodolfo Villa | Colton, California. |
| 322. | Edgar Villafurte | Los Angeles, California. |
| 323. | Rolando Villanueva | Victorville, California. |
| 324. | Gabriel Villasenor | Fontana, California. |
| 325. | Miguel Virgen | Modesto, California. |
| 326. | Kamaljit Virle | Lodi, California. |
| 327. | Chris Williams | Riverside, California. |
| 328. | Ronald Williams Jr. | Madera, California. |
| 329. | Ronald W. Williams | Madera, California. |
| 330. | Tony Williams | Madera, California. |
| 331. | Rambo Ying | Modesto, California. |
| 332. | Jose Zepeda | Los Angeles, California. |
| 333. | Edgar Zermeno | Fontana, California. |
| 334. | Luis Leon Zuniga | Fontana, California. |

## C. Defendants

### (1) Defendant Hub Group Inc

43. Plaintiffs are informed and believe, and based thereon allege, that Defendant Hub Group, Inc. is a Delaware corporation with its principal place of business at 2000 Clearwater Drive, Oak Brook, Illinois 60523. (*See* Exhibit B United States Securities and Exchange Commission Form 10-K identifying Defendant Hub Group Inc.'s principal executive office as located at 2000 Clearwater Drive, Oak Brook, Illinois 60523; *see also* Exhibit C, California Secretary of State Business Registration showing entity address 2000 Clearwater Drive, Oak Brook, Illinois 60523; *see also* Exhibit D, print out from Hub Group Inc.'s website showing corporate headquarters as located at 2000 Clearwater Drive, Oak Brook, Illinois 60523).

44. Plaintiffs are further informed and believe that in or around 2006, Defendant Hub Group Inc. acquired Defendant Comtrak Logistics Inc. (*See* Exhibit H, Defendant Hub Group Inc.'s 2005 United States Securities and Exchange Commission Form 10-K stating that "[o]n

January 19, 2006, we entered into a definitive agreement to acquire Comtrak").

45. The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 559 US 77, 91 (2010). Under the "nerve center" test, the principal place of business is the state "where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 92-93. Plaintiffs are informed and believe and the basis of such information and belief allege that Defendant Hub Group Inc.'s corporate officers, including but not limited to CEO David Yeager, President Mark Yeager, Vice President Terri Pizzuto, Chief Intermodal Officer Dan Burke, Chief Marketing Officer Christopher Kravas, Chief Supply Chain Officer David Marsh, Executive Vice President-Sales James Gaw and President – Mode Transportation James Damman.

46. Plaintiffs are informed and believe, and based thereon allege, that Defendant Hub Group, Inc., maintains two California terminals, one at 4221 East Mariposa Road, Stockton, California 95215 in San Joaquin County ("Stockton Terminal") and another at 3801 East Guasti Road, Ontario, California 91761 in San Bernardino County ("Ontario Terminal"). (*See* Exhibit D, print out from Hub Group Inc.'s website showing terminal locations in Stockton and Ontario California.)

47. Plaintiffs are further informed and believe that at all times relevant hereto, Defendant Hub Group Inc. has transacted, and continues to transact, business throughout the State of California.

**(2)** **Defendant Hub Group Trucking Inc.**

48. Plaintiffs are informed and believe, and based thereon allege, that Defendant Hub Group Trucking Inc., formerly Comtrak Logistics, Inc., is a Delaware corporation with its principal place of business at 2000 Clearwater Drive, Oak Brook, Illinois 60523. (See Exhibit E Corporate Records and Registrations identifying Hub Group Trucking Inc., as located at 2000 Clearwater Drive, Oak Brook, Illinois 60523 and as formerly named Comtrak Logistics Inc.; *see also* Exhibit F, California Secretary of State Business Registration showing entity address 2000 Clearwater Drive, Oak Brook, Illinois 60523; *see also* Exhibit G Illinois Secretary of State Website showing corporate officers located in Illinois; *see also* Exhibit I Comtrak Logistics'

1  website stating, "[a]s of March 10, 2014, Comtrak Logistics has been renamed Hub Group
2  Trucking").

3      49.    The appropriate test to determine a corporation's principal place of business is the
4  "nerve center" test. *Hertz Corp. v. Friend*, 559 US 77, 91 (2010). Under the "nerve center" test,
5  the principal place of business is the state "where a corporation's officers direct, control, and
6  coordinate the corporation's activities." *Id*. at 92-93. Plaintiffs are informed and believe and the
7  basis of such information and belief allege that Defendant Hub Group Trucking Inc.'s corporate
8  officers, including but not limited to Chairman/Director David Yeager, President Dan Burke,
9  Secretary/Director Mark Yeager, Secretary David Zeilstra, and Treasurer Terri Pizzuto, direct and
10  control the corporations activities from Oak Brook, Illinois.

11      50.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Hub
12  Group Trucking Inc., formerly Comtrak Logistics, Inc., maintains two California terminals, one at
13  4221 East Mariposa Road, Stockton, California 95215 in San Joaquin County ("Stockton
14  Terminal") and another at 3801 East Guasti Road, Ontario, California 91761 in San Bernardino
15  County ("Ontario Terminal"). (*See* Exhibit D, print out from Hub Group Inc.'s website showing
16  Defendant Hub Group Trucking Inc. terminals in Stockton and Ontario California.)

17      51.    Plaintiffs are further informed and believe that at all times relevant hereto, Defendant
18  Hub Group Trucking Inc., has transacted, and continues to transact, business throughout the State
19  of California.

20  **(3)    Comtrak Logistics, Inc.**

21      52.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Comtrak
22  Logistics, Inc. is a Delaware corporation with its principal place of business at 2000 Clearwater
23  Drive, Oak Brook, Illinois 60523. Defendant maintains two California terminals, one at 4221 East
24  Mariposa Road, Stockton, California 95215 in San Joaquin County ("Stockton Terminal") and
25  another at 3801 East Guasti Road, Ontario, California 91761 in San Bernardino County ("Ontario
26  Terminal"). Plaintiffs are further informed and believe that at all times relevant hereto, Defendant
27  Comtrak has transacted, and continues to transact, business throughout the State of California.

28  / / /

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

**(4)      Defendants Does 1 To 10, Inclusive**

53.      DOES 1 to 10, inclusive, are now, and/or at all times mentioned in this Complaint were, licensed to do business and/or actually doing business in the State of California. Plaintiff does not know the true names or capacities, whether individual, partner, or corporate, of DOES 1 to 10, inclusive, and for that reason, DOES 1 to 10 are sued under such fictitious names. Plaintiffs will seek leave of court to amend this Second Amended Complaint to allege such names and capacities as soon as they are ascertained. DOES 1 to 5 are believed to be business entities who were also co-employers of Plaintiffs, the putative Class.

**(5)      All Defendants**

54.      Plaintiffs are informed and believe, and based upon such information and belief allege, that the Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

55.      Plaintiffs are further informed and believe, and based upon such information and belief allege, that at all times herein mentioned, all Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

56.      Plaintiffs are further informed and believe, and based upon such information and belief allege, that at all times herein mentioned, Defendants, and each of them, proximately caused Plaintiffs, all others similarly situated, and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

57.      Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common

1  enterprise and, as such were co-employers of Plaintiffs, and the putative Class

2      58.      Defendants, and each of them, at all times mentioned in this Complaint, concurred with,

3  contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts

4  and omissions of each and every one of the other Defendants in proximately causing the injuries

5  and/or damages alleged in this Complaint.

6                                **III. JURISDICTION AND VENUE**

7      59.      On April 6, 2015, this case was transferred to this Court from the United States District

8  Court for the Eastern District of California

9                                **IV. FACTUAL ALLEGATIONS**

10 **A.  Background**

11     60.      This case was initially filed on January 13, 2013 by Plaintiff, Salvador Robles, in the

12 United States District Court for the Eastern District of California alleging that Defendants

13 misclassified their California-based drivers as independent contractors when, under California law,

14 they were in fact employees. The initial Complaint asserted twelve causes of action against

15 Defendants including (1) declaratory relief that the drivers should have been properly classified as

16 employees; (2) reimbursement of business expenses including but not limited to costs for fuel,

17 truck operation, maintenance, repairs, insurance, required escrow, tolls, etc.; (3) recovery of

18 unpaid minimum wages for all hours worked during the day; (4) recovery of unpaid wages for

19 time spent driving actual miles as opposed to estimated miles; (5) recovery of unpaid wages at the

20 agreed rate; (6) wages below the designated rate for actual miles driven; (7) quantum meruit/unjust

21 enrichment; (8) failure to provide meal periods; (9) failure to provide rest periods; (10) failure to

22 timely furnish accurate itemized wage statements; (11) waiting time penalties; and (12) violation

23 of California Business and Professions Code section 17200 *et seq.*

24     61.      On February 26, 2013, Defendant declined consent to Jurisdiction of U.S. Magistrate.

25 Defendant filed a motion to dismiss on matters of California law on March 26, 2013, which was

26 later withdrawn to allow Plaintiff, Salvador Robles, to file the First Amended Complaint.

27 Thereafter, at the request of Defendants, Plaintiff, Salvador Robles, agreed to stay outstanding

28 class discovery then due **so that Defendants could re-file and the Court could rule on**

**Defendants' Motion to Dismiss its First Amended Complaint (FAC)**. In exchange for this agreement, Plaintiff's counsel sought assurance that Defendants would not try to reach settlement agreements with putative class members. (*Id.*) In an email dated May 29, 2013, Defendants' counsel responded,

> we can represent that Comtrak is not currently seeking out putative class members in response to this litigation and trying to settle the case out from under plaintiff or putative class counsel.  In other words, we are not attempting a *Pick-Up Stix* styled settlement, if that is what you are wondering.

62.     Based upon this representation, on July 8, 2013, Plaintiff's counsel agreed to the requested discovery stay, and the parties filed their joint stipulation with the Court.

63.     On May 6, 2013, Plaintiff, Salvador Robles, filed his First Amended Complaint adding eleven (11) claims based on Defendants' violations of the California Labor Code, California IWC Wage Order No. 9 and the UCL for the time period Plaintiff, Salvador Robles, was classified by Defendants as an employee.

64.     On June 3, 2013, Defendants filed their Motion to Dismiss the FAC arguing that California wage and hour law was preempted by the   Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c)(1) (FAAAA).  On July 10, 2013, Plaintiff filed his opposition to Defendant's motion to dismiss and Defendant filed its reply on July 17, 2013. On July 18, 2013, the United States District Court for the Eastern District of California, the Honorable John A. Mendez presiding, issued a minute order requiring the parties to file a joint status report briefing the issue of whether staying the action pending resolution of Ninth Circuit appeals in the cases of *Dilts v. Penske Logistics, LLC*[1]("*Dilts*")  and *Campbell v. Vitran Express, Inc.*[2] ("*Campbell*") would serve judicial efficiency and economy, as those cases involved questions of law implicated in the Defendant's motion to dismiss pending before the Court.

65.     On July 24, 2013, the parties filed their joint status report in which Plaintiff opposed a stay, and the Defendant argued in favor of the stay.  On August 5, 2013, the Court then issued its Order staying the case.

---

[1] No. 12-55705

[2] No. 12-56250

66.     On July 14, 2014, approximately a year later, the parties filed a Joint Notice of Decision informing the Court that on July 9, 2014, the Ninth Circuit issued its decision in Dilts, wherein the Court ruled that "the state laws at issue [California meal and rest break laws] are not 'related to' prices, routes, or services and therefore are not preempted by the FAAAA.". On July 25, 2014, the Court ordered the stay in this case lifted. On July 30, 2014, Defendant requested leave to file a supplemental brief in support of its motion to dismiss. The Court granted Defendant's request and Defendant filed its supplemental brief on August 20, 2014 [Docket No. 43]. Plaintiff filed his supplemental brief on September 3, 2014.

67.     Beginning on or about August 24 and continuing over the course of the next few days, Defendant held meetings in California at hotels located nearby Defendant's Stockton and Ontario Terminals.  Upon arriving at the meeting, the drivers were told that they were being converted to employee drivers while simultaneously being informed of the settlement offers and presented with prepared settlement checks to pick up immediately – as soon as they had signed releases of claims in this litigation which were also simultaneously provided to them. Further, in connection with the conversion to employee drivers, the drivers were informed that refusal to accept the employee status would result in the driver being terminated as a driver for Defendants in any manner, rendering the driver out of work, since their services as supposed independent contractor drivers would no longer be accepted. If a driver chose not to convert to an employee driver, that driver would also immediately become responsible for buying Defendants out of the tractor lease on his or her truck, requiring an up front balloon payment oftentimes in the tens of thousands of dollars along with a significant increase in the amount of the monthly payment going forward.  By the end of the week, over ninety percent of the drivers accepted settlement offers from Defendant, most of which were accepted on the first day the offers were presented to them.  Subsequently, over three hundred of those individuals signed on as clients of Marlin & Saltzman to represent their interests in moving forward in the action.

68.     Nearly three months later, on December 19, 2014, the United States District Court for the Eastern District of California, the Honorable John A. Mendez presiding, issued its order on Defendant's long pending Motion to Dismiss Plaintiff Salvador Robles' FAC, denying the same,

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

and finding:

> Plaintiff's action does not seek to prevent Defendant from utilizing independent contractors in its business model, but merely to comply with the applicable labor laws of the State of California when compensating and classifying its workers. The Court finds the FAAA Act does not preempt California's laws regarding the classification of employees and therefore does not preempt Plaintiff's IC Claims.

69.     On January 16, 2015, Defendants filed both their answer to Plaintiff Salvador Robles' FAC and their Motion to Transfer Venue to the United States District Court for the Western District of Tennessee on the ground that the Independent Contractor and Equipment Lease Contract contained a forum selection clause providing that "any action or suit relating to this Agreement shall be brought in the state or federal courts sitting in Memphis, Tennessee, and in no other court."

70.     On January 20, 2015, Defendants produced the class list.

71.     On February 25, 2015, Plaintiff Salvador Robles filed his opposition to Defendants' motion. Because Defendants did not assert the choice-of-law provision of the Contract, but rather moved only on the forum selection provision, Plaintiff Salvador Robles was limited to arguing public policy only as it related to venue.3  On March 4, 2015, Defendant filed its reply in support of it Motion to Transfer Venue. On April 3, 2015, the United States District Court for the Eastern District of California, the Honorable John A. Mendez presiding, issued its Order granting Defendant's motion. In reaching its holding, the Court relied on Defendant's representation that it was only seeking to enforce the forum selection provision and not the choice of law provision which would likely result in a forfeiture of Plaintiff's California statutory rights. Specifically, the Court stated;

> [I]f the forum is not adequate, a forum selection clause that applies to a non-waivable statutory claim may, in fact, improperly compel the claimant to forfeit his or her statutory rights. In such a case, the forum selection clause is contrary to the strong public policy of California and will not be enforced. More specifically . . .

---

3 As Defendants were likely aware, California and Ninth Circuit law regarding enforcement of its choice of law provision is clearly unfavorable to Defendant.  *See e.g. Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318 (9th Cir. 2012) (holding California, rather than Georgia law, applied in a class action alleging truck drivers were employees rather than independent contractors, even though Georgia had a substantial relationship to the parties); *Narayan v. EGL Inc.* 616 F.3d 895, 899 (9th Cir. 2010) (same).

the California Supreme Court has held clearly and unequivocally that it is against the strong public policy of California to enforce a forum selection clause where the practical effect of enforcement will be to deprive a plaintiff or class of plaintiffs of their unwaivable statutory entitlement to the minimum wage and overtime payments. [Citation].

Plaintiff argues the choice-of-law provision and the forum selection clause operate in tandem to deny him of his statutory rights under California law. However, there is no evidence provided, or found, indicating that a transfer of this case to the District Court for the Western District of Tennessee would deprive him of his rights. Federal courts in other states are "fully capable of applying California law." *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *6 (N.D. Cal. 2007). If Plaintiff's allegations regarding Defendant's misclassification of him and others as independent contractors are proven true, the court in Tennessee will be "fully capable" of awarding him the remedies and withheld benefits provided for under California labor laws.

## B. Working For Defendants

72.      Defendants provide transportation services throughout California. Up until in or around September 2014, Defendants' drivers fell into two categories; they were either owner operators, typically labeled "independent contractors," or they were company drivers, typically labeled "employees." Company drivers could become owner operators through Defendants' third-party Lease-to-Purchase Program. Company drivers, owner operators and Lease-to-Purchase drivers were all compensated in the same manner. Owner operators and Lease-to-Purchase drivers were misclassified as independent contractors.

73.      Throughout the Relevant Time Period, Defendants' company drivers, owner operators and Lease-to-Purchase drivers were generally responsible for driving trucks and delivering freight from one point to another.  Their work tasks generally included, among others, locating, inspecting, fueling and maintaining vehicles; hooking up and unhooking trailers; verifying loads; planning trips; completing daily logs, shipping documents and other paperwork; using the onboard computer system; waiting for customers and dispatch; and, of course, driving.

74.      Plaintiff Salvador Robles worked as a Driver at Defendants' Stockton, California Terminal. He was misclassified by Defendants as an "independent contractor."  He was paid on a piece-rate basis for mileage and by the load; was not compensated for all hours he worked or for all miles he drove; was not properly compensated or given "duty free" meal and rest breaks; was not reimbursed for all business expenses; was not provided accurate wage statements; and was not

1   paid all compensation upon termination.

2       75.    Plaintiff Salvador Robles also worked for Defendants as a company driver/employee.

3   His job duties were substantially similar as an employee to what they were during the time he

4   drove for Defendants as a misclassified independent contractor.  During the time Plaintiff Salvador

5   Robles was classified as an employee, he was likewise paid on a piece-rate basis for mileage and

6   by the load; was not compensated for all hours he worked or for all miles he drove; was not

7   properly compensated or given "duty free" meal and rest breaks; was not reimbursed for all

8   business expenses; was not provided accurate wage statements; and was not paid all compensation

9   upon termination.

10  **C.  Defendants' Misclassification of Employee Drivers**

11      76.    Throughout the Relevant Time Period, Defendants retained and exercised significant

12  control over the details of Drivers' work. As such, under California law, Drivers were Defendants'

13  employees, not independent contractors.

14      77.    The principal test of an employment relationship is whether the person to whom service

15  is rendered has the **right to control** the manner and means of accomplishing the result desired. *See*

16  *Ayala v. Antelope Valley Newspaper Inc.,* 59 Cal.4th 522, 533 (2014); *see also S. G. Borello &*

17  *Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989).  Throughout the Relevant

18  Time Period, Drivers were integral to the operation of Defendants' core business; they were hired

19  to pick up, transport and deliver freight in California based on times, locations and for amounts

20  determined by Defendants.

21      78.    Also, throughout the Relevant Time Period, upon hiring, Drivers were provided with

22  Defendants' Policies and Procedures Handbook.  The Policies and Procedures Handbook detailed

23  various rules which Comtrak's drivers were required to abide.  Additionally, Drivers were required

24  to attend quarterly work meetings discussing Defendants' policies and procedures. When Drivers

25  did not follow Defendants' policies and procedures, they were subject to discipline.

26      79.    Also, throughout the Relevant Time Period, Defendants unilaterally set the prices

27  charged to its customers, as well as the compensation rates paid to Drivers. Drivers had no control

28  over the prices charged to Defendants' customers, nor did they have any control over the amount

Case No. 2:15-cv-002228-SHM-tmp
**THIRD AMENDED COMPLAINT**

of their own compensation.

80.     Also, throughout the Relevant Time Period, Defendants controlled Drivers' every move. Defendants determined the number and order of all delivery stops and scheduled the times for each pick up and delivery.  If a Driver was running late and was unable to arrive at the next appointment at the scheduled time, the Driver was required to send Defendants a message through communication equipment, which Defendants required Drivers to install in their trucks at their own expense.

81.     Also, throughout the Relevant Time Period, Defendants maintained GPS trackers on each truck. Using the GPS equipment, Defendants kept track of the Drivers every location.  If a Driver was stationary too long in a single location, Defendants would contact the Driver through the communication equipment and ask the Driver why they were stopped and what was taking them so long.

82.     Also, throughout the Relevant Time Period, Defendants disciplined Drivers who arrived late to a delivery stop.

83.     Also, throughout the Relevant Time Period, Defendants further maintained control over Drivers' helpers and/or substitute drivers. Helpers and substitute drivers were required to submit to Defendants' "Driver Qualification Policy." Defendants' qualification policy required Drivers' helpers and/or substitute drivers to complete a Defendants application, the same application completed by both owner operator and employee applicants. Further, Defendants supervised the conduct of Drivers' helpers or substitute drivers and retained the ability to terminate Drivers based on "improper conduct."

84.     As noted above, throughout the Relevant Time Period, Defendants required Drivers to install equipment both on their trucks and inside their cabs.  Defendants also prohibited Drivers from running loads for other companies and required that Drivers affix and display Defendants' logo on their trucks.

85.     Also, throughout the Relevant Time Period, Defendants required Drivers to return to the yard at the end of each shift and turn in a "Trip Pack," which included the itinerary of Drivers' stops and the arrival and departure times of Drivers' deliveries.

29

86.     Also, throughout the Relevant Time Period, Defendants retained the right to terminate Drivers at any time with or without cause.

87.     Also, throughout the Relevant Time Period, Defendants' Drivers were required to pay many employment-related expenses including, but not limited to, truck payments, fuel, maintenance, repairs, quarterly inspections, tolls, ferry charges, late delivery fees, cargo loss or damage, and licensing; and liability and other insurance covering work place injuries.

88.     Fuel costs for Drivers were significant. Because Drivers typically could not cover this expense, throughout the Relevant Time Period, Defendants provided Drivers with a fuel credit card.  Defendants then deducted the cost of fuel from Drivers' weekly paychecks. Plaintiffs are informed and believe and in that basis allege that Defendants also charged Drivers a fee for the use of the fuel card.

89.     Also, throughout the Relevant Time Period, Defendants fronted a number of other employment–related expenses for Drivers and then deducted those costs from Drivers' paychecks. These may have included, among others, money advances, fines and penalties, credit union charges, carrier tags, late delivery fees, express mailing fees, tires, medical and first aid, repairs and weight (overload) tickets.

90.     Also, throughout the Relevant Time Period, Defendants also often carried Drivers' auto liability, property damage and cargo insurance policies. The costs of these policies were then deducted from Drivers' pay.

91.     Also, throughout the Relevant Time Period, Defendants issued paychecks to Drivers, as individuals, not as business entities. Defendants made deductions from Drivers' paychecks for Drivers' operational and other costs.

92.     Throughout the Relevant Time Period, Drivers signed independent contractor agreements with Defendants that labeled Drivers as "independent contractors."  However, despite this label, Defendants treated Drivers like employees. Some of the many indicia of employment included, but were not limited to Drivers were paid on a regular schedule; Drivers were required to affix Defendants' logo on to their trucks; Defendants typically determined the order in which deliveries were made; Drivers were typically required to notify Dispatch when they were running

30

late on a delivery and Dispatch monitored Drivers' locations and contacted Drivers if they were stationary too long.

**D. Defendants Required Drivers to Cover their Business Costs**

93.     At all times relevant hereto, California Labor Code section 2802 required employers to indemnify their employees for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…"

94.     California IWC Wage Order, No. 9, section 8 prohibits employers from making any deduction from the wage of an employee for any unintentional cash shortage, breakage, or loss of equipment. California IWC Wage Order, No. 9, section 9 requires employers to maintain tools and equipment required by the employer or that are necessary to the performance of the job.

**Regulatory Background**

95.     Defendants operations are regulated and licensed by various government agencies, including the Department of Transportation ("DOT") and the Environmental Protection Agency ("EPA"). These and other federal and state agencies regulate Defendants' equipment, operations, drivers, and third-party capacity providers.

96.     Throughout the course of the last two decades, the EPA has adopted a series of emissions control regulations that require progressive reductions in exhaust emissions from new diesel engines manufactured on or after October 2002, January 2007, and January 2010. Compliance with these regulations increased Defendants' new tractor costs and operating expenses and reduced Defendants' fuel economy.

97.     In August 2011, the National Highway Traffic Safety Administration ("NHTSA") and EPA adopted a new rule that established the first-ever fuel economy and greenhouse gas standards for medium- and heavy-duty vehicles, which include tractor-trailers. These standards apply to model years 2014 to 2018, which are required to achieve an approximate 20 percent reduction in fuel consumption by 2018, which equates to approximately four gallons of fuel for every 100 miles travelled.

98.     In addition, in February 2014 President Barack Obama announced that his

administration will begin developing the next phase of tighter fuel efficiency standards for medium and heavy-duty vehicles, including tractor-trailers, and directed the EPA and NHTSA to develop new fuel-efficiency and greenhouse gas standards by March 31, 2016.

99.     At the state level, the California Air Resources Board ("CARB") also adopted emission control regulations that will be applicable to all heavy-duty tractors that pull 53-foot or longer box-type trailers within the State of California. The tractors and trailers subject to these CARB regulations must be either EPA SmartWay certified or equipped with low-rolling resistance tires and retrofitted with SmartWay-approved aerodynamic technologies. Enforcement of these CARB regulations for 2011 model year equipment began in January 2010 and will be phased in over several years for older equipment. Beginning January 1, 2014, CARB regulations required certain drayage trucks with 2006 or older model year engines to upgrade to 2007 or newer model year engines.

100.    Compliance with such regulations increased Defendants' operating expenses by increasing the cost of new tractors, potentially requiring Defendants to retrofit certain of their older model tractors, and reducing equipment productivity.

**Drivers Paid For Defendants' Trucks**

101.    Throughout the Relevant Time Period, by misclassifying Drivers as independent contractors, Defendants managed to pass on to the Drivers many of the increased costs noted above, plus other costs of running their business to Drivers. Many Drivers did not own their own tractors when they began working for Defendants. In addition, some Drivers that owned their own trucks may have opted to lease newer model trucks from Defendants.

102.    Also throughout the Relevant Time Period, many Drivers opted to lease their trucks through Defendants and Defendants' third party providers.

103.    Throughout the Relevant Time Period, Defendants required Drivers to make weekly truck payments to Defendants. Defendants further required Drivers to pay for all operational costs, maintenance, and repairs related to the trucks.

104.    Also throughout the Relevant Time Period, in order to make Drivers look like legitimate independent contractors and to carry out Defendants' unlawful scheme, Defendants

leased trucks back from Drivers under Defendants' Independent Contractor Equipment Lease Contracts. However, because Defendants' controlled every aspect of Drivers' work, including the number of loads Drivers were assigned, Defendants ultimately controlled whether or not Drivers succeeded. Accordingly, Drivers who were not assigned enough loads, frequently ran into financial difficulties and defaulted on their Equipment Lease Agreements.

105.    Plaintiffs are informed and believe and based on such information and belief allege that in these and other instances wherein Drivers were forced to return their trucks to Defendants, Defendants then placed new Drivers in the former Drivers trucks. Accordingly, Defendants were able to build and maintain their fleet at Drivers expense. As stated in Defendants 2014 10K, "[a]s a recruiting tool for our owner-operators, we are guaranteeing certain owner-operators' lease payments for tractors. . . The potential maximum exposure [under these lease guarantees] represents the amount of the remaining lease payments on all outstanding guaranteed leases as of December 31, 2014 and 2013. However, upon default, we have the option to purchase the tractors. We could then sell the tractors and use the proceeds to recover all or a portion of the amounts paid under the guarantees. Alternatively, we can contract with another owner operator who would assume the lease or continue to operate the leased tractor in our company fleet."

**E.   Defendants Deducted their Business Expenses From Drivers' Pay Checks**

106.    Throughout the Relevant Time Period, Defendants took deductions from Plaintiffs' paychecks for work-related expenditures or losses incurred by Plaintiffs in direct consequence of Plaintiffs' pick up, transport and delivery of freight in California based on times, locations and for amounts determined by Defendants.

107.    The Lease and Finance Agreements for the trucks included a Payment Discount Agreement which allowed Defendants to deduct Drivers truck lease payments directly from Drivers' weekly paychecks.

108.    Independent Contractor Equipment Lease Contracts also allowed Defendants to deduct many required employment-related expenses including, but not limited to, fuel, maintenance, repairs, quarterly inspections, tolls, ferry charges, late delivery fees, cargo loss or damage, and licensing; and liability and other insurance covering work place injuries directly from Drivers'

paycheck.

**F.  Defendants' Failure to Pay Minimum Wages and Designated Rates**

109.    California IWC Wage Order, No. 9 defines "hours worked" to mean "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

110.    Throughout the Relevant Time Period, Defendants suffered or permitted Drivers to work portions of the day for which Defendants failed to compensate them.  Drivers were subject to Defendants' control during this time.

111.    California Labor Code section 1182.12 and California IWC Wage Order,No. 9, section 4 provide that on and after January 1, 2008, the minimum wage shall be not less than eight dollars ($8.00) per hour.

112.    California Labor Code  section 1194(a) provides in relevant part: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage [] is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage [], including interest thereon, reasonable attorney's fees, and costs of suit."

113.    California Labor Code section 1194.2(a) provides in relevant part: "In any action under section 1193.6 or section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

114.    California Labor Code section 1197 provides: "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

115.    Plaintiffs are informed and believe, and therefore allege, that Defendants' compensation schemes do not fully compensate Drivers for all hours spent performing their job duties.

116.    Throughout the Relevant Time Period, Defendants exercised pervasive control over Drivers during Waiting Time. For example, during Customer Waiting Time, Drivers were often required to wait at or near customer facilities in advance of an appointment for delivery or pickup,

34

and/or they were required to wait at or near designated facilities for shipping or receiving personnel to accept and/or provide paperwork, and/or they were required to wait for a customer to commence loading or unloading a shipment. During Dispatch Waiting Time, Drivers could wait for their dispatchers to provide in-vehicle instructions regarding a work assignment, and/or they were often required to wait on-call between assignments for dispatch to provide further directions while they are on the road, and/or they were required to wait while monitoring the onboard computer system, while staying near their tractors/trailers, while being available to promptly accept reassignment, and without using the tractors/trailers for personal errands.

117.    Also throughout the Relevant Time Period and as a matter of policy and/or practice, Defendants only paid Drivers for driving time based on computerized estimates of the shortest estimated mileage between stops and delivery locations (i.e., based on the Household Movers Guide, or "HHMG" and measured from central post office to central post office), without compensating Drivers for the actual time spent driving in excess of the pre-determined mileage estimates.  Defendants' mileage estimates based on the HHMG were routinely less than the actual miles driven by Drivers and less than the practical miles warranted to make deliveries for Defendants' customers. In any event, Defendants' Mileage Pay scheme simply did not compensate Drivers for all of the actual miles driven (i.e., miles that Defendants called bobtail miles to home terminals at the end of shifts).  As a result, Defendants systematically failed to pay Drivers for hours spent driving in excess of the pre-determined mileage estimates.

118.    The failure to pay at least minimum wages to Drivers for each and every hour worked violated California Labor Code sections 1182.11-1182.12, 1194, 1194.2, and 1197; California IWC Wage Order, No. 9, section 4; and the UCL.

119.    The failure to pay designated wages to Drivers for each and every hour worked violated California Labor Code sections 221 and 223; California IWC Wage Order, No. 9; and the UCL.

**G.  Defendants' Failure to Provide Meal Periods**

120.    At all times relevant hereto, California Labor Code sections 226.7 and 512 and California IWC Wage Order, No. 9, section 11 required employers to provide employees with a first meal period of not less than thirty (30) minutes during which they must be relieved of all duty

before working more than five (5) hours and a second meal period of not less than thirty (30) minutes during which they must be relieved of all duty before working more than ten (10) hours per day.

121.    At all times relevant hereto, California Labor Code section 226.7(b) and California IWC Wage Order No. 9, section 11 required employers to pay one hour of additional pay at the regular rate of compensation for each employee and each workday that a proper meal period is not provided.

122.    Throughout the Relevant Time Period, Defendants failed to schedule breaks, keep records of break times and did not inform Drivers of their rights to a thirty (30) minute uninterrupted meal break under California law.

123.    Also throughout the Relevant Time Period, Defendants regularly failed to provide a timely thirty (30) minute off-duty meal period to Drivers when working more than five (5) hours in a day.

124.    Throughout the Relevant Time Period, Defendants further regularly failed to provide a second timely thirty (30) minute meal period to Drivers who worked more than ten (10) hours in a day.

**H.  Defendants' Failure to Permit Rest Periods**

125.    At all times relevant hereto, California Labor Code section 226.7 and California IWC Wage Order, number 9, section 12 required employers to authorize, permit, and provide a ten (10) minute paid rest period for each four (4) hours of work, during which employees are relieved of all duty.

126.    At all times relevant hereto, California Labor Code section 226.7(b) and California IWC Wage Order, number 9, section 12 required employers to pay one hour of additional pay at the regular rate of compensation for each employee and each workday that a proper rest period is not provided.

127.    Throughout the Relevant Time Period, Defendants regularly failed to provide a ten (10) minute paid rest period for each four (4) hours of work, during which Drivers were relieved of all duty.

128.    As a result of Defendants' activity-based and mileage-based compensation scheme, Defendants failed to compensate Drivers for break time when breaks were not taken.  Defendants' compensation scheme did not permit paid rest breaks as mandated by California law.

129.    Defendants regularly failed to pay one hour of additional pay at the regular rate of compensation for each Driver and each workday that a proper rest period was not provided.

I.    **Defendants' Failure to Maintain Adequate Employment Records and Failure to Provide Accurate Itemized Wage Statements**

130.    At all times relevant hereto, California Labor Code section 226 and California IWC Wage Order, number 9, section 7 required employers to maintain adequate employment records and provide employees with accurate itemized wage statements showing gross wages, total hours worked, all applicable hourly rates worked during each pay period, the corresponding number of hours worked at each hourly rate, and meal breaks taken.

131.    Wage statements provided to Drivers by Defendants, do not show all wages earned, all hours worked, or all applicable rates, in violation of the California Labor Code section 226, California IWC Wage Order number 9, section 7, and the UCL.

132.    Moreover, Defendants did not maintain adequate records of all wages earned, hours worked and meal breaks taken.

J.    **Defendants' Failure to Pay Wages Due on Termination**

133.    At all times relevant hereto, California Labor Code section 201 required an employer that discharges an employee to pay all compensation due and owing to said employee immediately upon discharge. California Labor Code section 202 requires an employer to pay an employee who quits all compensation due and owing to said employee within seventy-two (72) hours of an employee's resignation. California Labor Code section 203 provides that if an employer willfully fails to pay all compensation promptly upon discharge or resignation, as required under sections 201 and 202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

134.    Defendants willfully and knowingly failed to pay Drivers and Plaintiff, Individually, upon termination of employment, all accrued compensation including repayment of all unlawful

1   deductions from wages, payment of minimum wage compensation and missed meal and rest

2   periods compensation.

3      135.   Defendants further willfully failed to timely pay all compensation owed to Drivers and

4   Plaintiff, Individually, upon termination, including, but not limited to, wages owed to Drivers and

5   Plaintiff, Individually, for performing the Unpaid Tasks. As a result, Defendants are liable both for

6   accrued wages due at termination and for waiting time penalties.

7   **K.  Defendants' Attempts To Settle The Class Action From Under Plaintiff Salvador Robles**

8      136.   On or around August 27, 2014, Defendants began holding mandatory meetings with

9   their California-based Drivers in California at hotels located nearby Defendants' Stockton and

10  Ontario Terminals. Prior to arriving, The Drivers were not told the purpose of the meetings.  for

11  the stated purpose of informing the drivers Upon arriving at the meeting, Drivers were told of the

12  company's decision to convert the entire California fleet to an employer/employee model as

13  opposed to an independent owner operator model. They were then immediately also informed of

14  the settlement offers and presented with prepared settlement checks to pick up immediately upon

15  signing releases of claims in this litigation.

16     137.   These settlement offers were presented along with the paperwork required to be signed

17  by the Drivers to convert them to employee drivers. If Drivers  refused to agree to the conversion,

18  they would essentially be terminating the business relationship between the driver and Defendants,

19  rendering the class member out of work.

20     138.   Further, should a driver choose not to convert to an employee driver, that driver would

21  immediately become responsible for buying Defendants out of the lease on his or her truck,

22  requiring an up front balloon payment along with a significant increase in the amount of the

23  monthly payments going forward.

24     139.   Based on the foregoing and additional facts to be revealed through discovery, Plaintiffs

25  allege that Defendants' conduct in convincing the Drivers to execute releases of their claims in this

26  case was both coercive and improper.

27     140.   Federal Rule of Civil Procedure 23 entrusts the Court with broad authority to exercise

28  control over class actions. See *Gulf Oil Company v. Bernard*,, 452 U.S. 89, 99-101 (1981)

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties").

141.    Further, Courts have the supervisory power when managing class actions to direct that a "release" may be voided. *See, e.g., O' Brien v. Encotech Constr. Servs.*, 183 F. Supp. 2d 1047 (N.D. Ill. 2002) (ordering that improper releases signed by potential class members were void); *In re Federal Skywalk Cases*, 97 F.R.D. 370 (W.D. Mo. 1983). Indeed, the Supreme Court has recognized that such relief is possible, by observing that prior court approval of potentially misleading communications "may avoid the need to cancel consents obtained in an improper manner." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989) (emphasis added). The remedy used in situations in which the putative class members were given money to settle before certification has been for the Court to order the releases void, but the amounts paid still operative as a credit. *See, e.g., In re Fed Skywalk Cases*, 97 F.R.D. 370.

## V. CLASS ACTION ALLEGATIONS

142.    Pursuant to Federal Rule of Civil Procedure 23, this action is brought and may be properly maintained as a class action. This action satisfies the numerosity, ascertainability, commonality, typicality, adequacy, predominance, and superiority requirements.

**A.  Class Definition**

143.    Plaintiffs bring this suit as a class action on behalf of the Class of individuals defined as follows:

   a.  All current and former California-based truck drivers for Defendants, at any time from January 2009, to the present (the "Class Period") and who were classified by Defendants as independent contractors.

   b.  "California-based" refers to Drivers:

      i.  who had a residential address in California at any time during the Class Period; and/or

      ii.  who were assigned or associated with a terminal in California at any time during the Class Period.

39

c.   The phrase "assigned or associated with a terminal" includes any and all Drivers listed in Defendants' database in connection with a terminal.

144.   Plaintiffs further seek to establish the following subclasses:

a.   The Robles Subclass, which is defined as all class members who did not execute releases of their claims in this action on or around and after August 27, 2014;

b.   The Settlement-Release Subclass, which is defined as all class members who executed releases of their claims in this action on or around and after August 27, 2014.

**B.   Numerosity**

145.   Plaintiffs are informed and believe, and based on such information and belief allege that during the class period, hundreds of putative class members have worked for Defendants as independent contractors.   To date, more than 300 putative class members have signed retainer agreements with Plaintiffs' counsel. Because so many persons have worked for Defendants in this capacity, the putative members of the Plaintiff Class are so numerous that joinder of all members is impossible and/or impracticable. While the exact number and specific identities of the member class is presently unknown to Plaintiffs, this information may readily be ascertained through inspection of Defendants' business records.

**C.   Commonality**

146.   Plaintiffs are informed and believe, and based on such information and belief allege, that numerous questions of law and/or fact are common to all members of the Class including, without limitation:

a.   Whether the Drivers served Defendants as employees rather than independent contractors under California law;

b.   Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants failed to indemnify Drivers for their necessarily incurred employment-related expenses and losses, in violation of California Labor Code section 2802;

c.   Whether, as a result of Defendants' misclassification of Drivers as "independent

contractors," Defendants made deductions from the compensation paid to Drivers in violation of California law;

d.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants required, encouraged, suffered, or permitted Drivers to perform certain work-related duties without compensation equal to at least the California minimum wage;

e.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors,"  Defendants violated California Labor Code sections 1182.11 and 1194 and California IWC Wage Order, number 9, section 4 by failing to pay Drivers at least the minimum wage compensation for all hours worked;

f.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code sections 221 and 223 by failing to pay Drivers at the designated rate for all hours worked;

g.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants failed to provide adequate off-duty meal periods and meal period compensation, in violation of California Labor Code sections 226.7, 512 and 516 and California IWC Wage Order, number 9 section 11;

h.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants failed to provide paid rest periods and rest period compensation, in violation of California Labor Code sections 226.7, 512 and 516 and California IWC Wage Order, number 9 section 12;

i.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants knowingly and intentionally failed to provide Drivers with accurate, itemized statements, as required by California Labor Code section 226 and California IWC Wage Order, number 9 section 7;

j.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code section 1174 and California IWC Wage Order, number 9 section 7 by failing to maintain

documentation of the actual hours worked each day by Drivers;

k.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code section 1174 and California IWC Wage Order, number 9, section 7 by failing to document meal periods;

l.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code section 201 and 202, by failing, upon termination, to timely pay Drivers all wages due;

m.  Whether Defendants' conduct constitutes unlawful, unfair and/or fraudulent business practices under the UCL;

n.  Whether Class members are entitled to compensatory damages requiring Defendants to pay Class members for unpaid minimum wages and wages at designated rates;

o.  Whether Class members are entitled to liquidated damages from Defendants for unpaid minimum wages under California Labor Code section 1194.2;

p.  Whether Class members are entitled to restitution of minimum wages, or wages at the designated rates;

q.  Whether Class members are entitled to meal period premium wages;

r.  Whether Class members are entitled to restitution of meal period premium wages;

s.  Whether Class members are entitled to rest period premium wages;

t.   Whether Class members are entitled to restitution for rest period premium wages;

u.  Whether Defendants are liable for damages pursuant to California Labor Code sections 450 and 2802;

v.  Whether Defendants are liable for prejudgment interest;

w.  Whether Defendants are liable for attorneys' fees and costs;

x.  Whether Defendants are liable to Class members for statutory penalties for unpaid wages (*e.g.* under California Labor Code sections 203 and 226(e)); and

y.  Whether the settlement agreements executed by members of the Settlement Release

Case No. 2:15-cv-002228-SHM-tmp
**THIRD AMENDED COMPLAINT**

1    Subclass are invalid.

2    **D.  Typicality**

3    147.    Plaintiffs are informed and believe, and based on such information and belief allege

4    that Plaintiff's claims are typical of the claims of all members of the Class whom they seek to

5    represent. Defendants treated both Plaintiffs and all members of the Class in a virtually identical

6    manner with respect to the violations of law asserted herein. These violations of law arise out of

7    Defendants' common course of conduct in *inter alia* (a) misclassifying Drivers as independent

8    contractors; (b) requiring members of the Class to work hours for which they were not properly

9    compensated in terms of basic minimum wages and/or designated rates; (c) requiring members of

10   the Class to forego duty free meal breaks and paid rest breaks to which they were entitled;

11   (d) receive inaccurate wage statements; (e) failed to reimburse Drivers for business expenses; and

12   (f) endure unfair business practices within the meaning of the UCL; and for the Settlement Release

13   Subclass (g) being unfairly coerced into signing releases of their claims.

14   **E.  Adequacy of Representation**

15   148.    Plaintiffs are informed and believe, and based on such information and belief allege

16   that Plaintiffs will fairly and adequately protect the interests of the members of the Class they seek

17   to represent. Plaintiffs are adequate representatives of the Class because each Plaintiff is also a

18   member of each of the Subclasses and because Plaintiffs' interests do not conflict with the

19   interests of the members of the Class and Subclasses they seek to represent. Plaintiffs have

20   retained counsel competent and experienced in the prosecution of complex class actions and

21   Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Class.

22   Plaintiffs and their counsel will fairly and adequately protect the interests of the Class members.

23   **F.  Superiority**

24   149.    Plaintiffs are informed and believe, and based on such information and belief allege,

25   that this action is properly brought as a class action, not only because the prerequisites of Federal

26   Rule of Civil Procedure 23 and common law related thereto are satisfied (as outlined above), but

27   also because of the following:

28        a.   The prosecution of separate actions by or against individual members of the Class

43

would create risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards for conduct for the parties;

b.   Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not pursuant to California Labor Code sections 1182.12, 1194, 1197, and the applicable parties to the adjudications or substantially impair or impede their ability to protect their interests;

c.   Defendants have acted or refused to act on grounds generally applicable to all members of the Class, making declaratory relief appropriate with respect to all of the Class;

d.   Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members; and

e.   Class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

## <u>FIRST CAUSE OF ACTION</u>

### DECLARATORY RELIEF

**(On Behalf of the Settlement Release Subclass)**

**(Against All Defendants)**

150.   Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

151.   An actual controversy has arisen between the Settlement Release Subclass, on the one hand, and Defendants on the other, relating to the following matters:

a.   Whether the releases obtained by Defendants are invalid

152.   Plaintiffs  Jorge Avalos, Jose Marquez and the members of the Settlement Release Subclass seek declaratory relief against all Defendants herein which declares the releases of claims in this litigation obtained by Defendants are void and the money paid to the members of the Settlement Release Subclass be used as a credit towards any eventual recovery in this action. *See,*

44

*e.g., In re Fed Skywalk Cases,* 97 F.R.D. 370.

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF

**(On Behalf of Plaintiffs and the Putative Class)**

**(Against All Defendants)**

153.  Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

154.  An actual controversy has arisen between Plaintiffs and the Plaintiff Class, on the one hand, and Defendants on the other, relating to the following matters:

　　　　a.  Whether Defendants misclassified Plaintiffs and the Plaintiff Class as "independent contractors" when, in fact, they were treated by Defendants as employees;

155.  Plaintiffs and the Plaintiff Class further seek declaratory relief against all Defendants herein and in Plaintiffs' favor, which declares Defendants' practices to be unlawful, and which provides for recovery of all sums determined by this Court to be owed by Defendants, and each of them, to Plaintiffs and the Plaintiff Class.

## THIRD CAUSE OF ACTION

### REIMBURSEMENT OF BUSINESS EXPENSES

**(On Behalf of Plaintiffs and the Putative Class)**

**(Against All Defendants)**

156.  Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

157.  California Labor Code section 2802(a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…."

158.  For the three (3) years preceding the filing of this lawsuit, Plaintiff and members of the putative Class were employed by Defendants within the State of California.  Defendants are required to indemnify and reimburse Plaintiffs and members of the putative Class for all

expenditures or losses incurred in direct consequence of the discharge of their duties, but failed to do so as required by the laws and regulations of the State of California. Labor Code section 2802 prohibits employers from passing the ordinary business expenses and losses of the employer onto the employee.

159. Defendants have violated California Labor Code section 2802 and California IWC Wage Order, number 9, section 8 by unlawfully taking deductions from Plaintiff's and the Plaintiff Class' compensation to cover certain ordinary business expenses of Defendants including, but not limited to, truck payments, costs of operating and repairing necessary equipment, overweight tickets and other fines, claims for loss or damaged cargo, property damage and bodily injury claims, fuel and "service claims" granted to customers.

160. Defendants have further violated California Labor Code section 2802 and California IWC Wage Order, number 9, section 8, since converting Drivers to employees, by requiring Drivers to cover certain ordinary business expenses of Defendants including, but not limited to, costs of repairing the trucks.

161. Because Defendants took unlawful deductions from Plaintiff's and the Plaintiff Class' compensation, they are liable to Plaintiff and the Plaintiff Class for the compensation that should have been paid but for the unlawful deductions, pursuant to California Labor Code, sections 221, 223, and 400-410, and California IWC Wage Order, number 9 section 8.

162. By unlawfully deducting wages and failing to pay Plaintiff and the Plaintiff Class, Defendants are also liable for penalties, reasonable attorneys' fees, and costs under California Labor Code sections 218.5 and 1194.

163. Plaintiff and the Plaintiff Class seek reimbursement for business expenses unlawfully deducted from their compensation according to proof, interest, penalties, attorneys' fees, and costs against Defendants in a sum provided by the California Labor Code and/or other statutes.

164. Plaintiffs and the other Class members also request relief as described below.

/ / /

/ / /

/ / /

**FOURTH CAUSE OF ACTION**

**FAILURE TO PAY MINIMUM WAGE FOR ALL HOURS WORKED**

**(On Behalf of Plaintiffs and the Putative Class)**

**(Against All Defendants)**

165.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

166.    Pursuant to California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9 section 4, Plaintiffs may bring a civil action for unpaid minimum wages directly against an employer.

167.    At all relevant times herein, California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9, section 4 provided for payment of state-law minimum wages at the rate described therein.

168.    Defendants' compensation scheme did not fairly compensate Drivers for Waiting Time, or other activities including but not limited to pre and post trip inspections, fueling trucks, filling out paperwork, and waiting for dispatch.  As a result, Defendants suffered or permitted Plaintiffs and the Plaintiff Class to perform work without compensation, while subject to Defendants' control.

169.    By failing to maintain adequate time records as required by California Labor Code section 1174(d) and California IWC Wage Order, number 9, section 7(A), Defendants have made it difficult to calculate the minimum wage compensation due Plaintiffs and the Plaintiff Class.

170.    Defendants owe Plaintiffs and the Plaintiff Class minimum wages and liquidated damages pursuant to California Labor Code sections 1182.12, 1194, 1194.2 and 1197, California IWC Wage Order, No. 9, section 4 due in amounts to be determined at trial during the three (3) years prior to the filing of this Complaint.

171.    Plaintiffs and the Plaintiff Class request payment of unpaid minimum wages due in amounts to be determined at trial, interest, attorneys' fees and costs, against Defendants in a sum as provided by the California Labor Code and/or other statutes.

172.    Plaintiffs and the other Class members also request relief as described below.

## FIFTH CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE FOR TIME SPENT DRIVING ACTUAL MILES

### (On Behalf of Plaintiffs and the Putative Class)

### (Against All Defendants)

173.   Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

174.   Pursuant to California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9 section 4, Plaintiffs may bring a civil action for unpaid minimum wages directly against an employer.

175.   At all relevant times herein, the applicable California Labor Code sections and California IWC Wage Order referenced herein applied to Plaintiffs and the Plaintiff Class.

176.   At all relevant times herein, California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9, section 4, provided for payment of state-law minimum wages at the rate described therein.

177.   Defendants engaged Class members to drive trucks in the course and scope of employment. Defendants' compensation scheme included, among others, a mileage-based system. However, Defendants' compensation schemes only covered wages for a portion of the miles actually driven in route based on the HHMG Shortest Route Estimates. As a result, Defendants failed to pay wages to Class members for the time they actually spent driving actual miles.

178.   With respect to all actual miles actually driven, Defendants have intentionally and improperly failed to make payment of minimum wages to Plaintiffs and the Plaintiff Class in violation of the California Labor Code, applicable regulations and California IWC Wage Order, No. 9.

179.   Defendants owe Plaintiffs and each putative Class member minimum wages and liquidated damages pursuant to California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9, section 4 due in amounts to be determined at trial during the three (3) years prior to the filing of this Complaint.

180.   Plaintiffs and the other Class members request payment of unpaid minimum wages due

48

1   in amounts to be determined at trial, plus interest, attorneys' fees and costs, against Defendants in

2   a sum as provided by the California Labor Code and/or other statutes.

3      181.   Plaintiffs and the other Class members also request relief as described below.

4   ### SIXTH CAUSE OF ACTION

5   **PAYMENT OF WAGE BELOW DESIGNATED RATE FOR ALL HOURS WORKED**

6   **(On Behalf of Plaintiffs and the Putative Class)**

7   **(Against All Defendants)**

8      182.   Plaintiffs hereby incorporate by reference each and every one of the allegations

9   contained in the preceding paragraphs as if the same were fully set forth herein.

10     183.   At all relevant times herein, the applicable California Labor Code sections referenced

11  herein applied to Drivers employed with Defendants.

12     184.   At all relevant times herein, California Labor Code section 223 provided "[w]here any

13  statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful

14  to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

15     185.   Defendants' compensation scheme purported to compensate Plaintiffs and the Plaintiff

16  Class for all hours worked.  In reality, Defendants suffered or permitted Plaintiffs and the Plaintiff

17  Class to work portions of their day without compensation, while subject to Defendants' control.

18     186.   California law requires employers to pay wages in accordance with a designated wage

19  scale.  Nevertheless, Defendants paid less than minimum wages and less than the agreed upon

20  compensation owed to Plaintiffs and the Plaintiff Class, while purporting to pay the designated

21  wage scale. As a result, Defendants' conduct violates California Labor Code sections 221 and 223.

22     187.   Defendants owed and still owe Plaintiffs and the Plaintiff Class wages pursuant to the

23  California Labor Code in amounts to be determined at trial for the hours worked during the

24  relevant time period.

25     188.   Plaintiffs and the other Class members request payment of unpaid wages below the

26  designated rate in amounts to be determined at trial, plus interest, attorneys' fees and costs, against

27  Defendants in a sum as provided by the Labor Code and/or other statutes.

28     189.   Plaintiffs and the other Class members also request relief as described below.

### SEVENTH CAUSE OF ACTION

### PAYMENT OF WAGE BELOW DESIGNATED RATE

### FOR TIME SPENT DRIVING ACTUAL MILES

### (On Behalf of Plaintiffs and the Putative Class)

### (Against All Defendants)

190.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

191.    At all relevant times herein, the applicable California Labor Code sections referenced herein applied to Plaintiffs and the Plaintiff Class.

192.    Pursuant to California Labor Code section 223, it is unlawful for Defendants to purport to pay the wage designated by statute or by contract while actually paying a lower wage.

193.    Defendants engaged Class members to drive trucks in the course and scope of employment. Defendants' compensation scheme included, among others, a mileage-based system. However, instead of compensating Plaintiffs and the Plaintiff Class for all miles actually driven, Defendants only paid wages based on the HHMG Shortest Route Estimates. Consequently, Defendants failed to pay wages to Plaintiffs and the Plaintiff Class for the time they actually spent driving the extra miles.

194.    With respect to all miles actually driven, Defendants have intentionally and improperly failed to make payment of wages to Plaintiffs and the Plaintiff Class in accordance with rates as designated by statute and/or contract. Defendants' conduct violates California Labor Code sections 221 and 223.

195.    Defendants owed and still owe Plaintiffs and the Plaintiff Class wages pursuant to the California Labor Code in amounts to be determined at trial for the hours worked during the relevant time period.

196.    Plaintiffs and other Class members request payment of unpaid wages below the designated rate in amounts to be determined at trial, plus interest, attorneys' fees and costs, against Defendants in a sum as provided by the Labor Code and/or other statutes.

197.    Plaintiffs and the other Class members also request relief as described below.

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

**EIGHTH CAUSE OF ACTION**

**QUANTUM MERUIT/UNJUST ENRICHMENT**

**(On Behalf of Plaintiffs and the Putative Class)**

**(Against All Defendants)**

198.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

199.    Plaintiffs and the Plaintiff Class conferred a benefit upon Defendants by working on their behalf without compensation, including but not limited to, time spent driving miles for which Drivers were not compensated and working hours for which they were not compensated.

200.    Plaintiffs and the Plaintiff Class conferred a benefit upon Defendants by paying for a fleet of trucks for their business, as well as business expenses on behalf of the business including but not limited to fuel, insurance, license fees, tolls, maintenance and repairs on the trucks..

201.    Defendants had an appreciation or knowledge of the benefit conferred by Plaintiffs and the Plaintiff Class.

202.    Defendants accepted and retained the benefit under circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value, which includes, but is not limited to the unpaid hours worked by Plaintiffs, as well as all the expenses paid by Plaintiffs as set forth in this Complaint, and to be discovered.

**NINTH CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS**

**(On Behalf of Plaintiffs and the Putative Class)**

**(Against All Defendants)**

203.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

204.    Plaintiffs are informed and believe, and thereon allege, that Plaintiffs and the Plaintiff Class regularly worked more than five (5) hours per shift and were entitled to a meal period of not less than thirty (30) minutes without duty.  Plaintiffs are further informed and believe, and thereon allege, that Plaintiffs and the Plaintiff Class regularly worked more than ten (10) hours per shift

1   and were entitled to a second meal period of not less than thirty (30) minutes without duty.

2   205.   Nevertheless, Plaintiffs are informed and believe, and thereon allege, that Defendants

3   routinely failed to provide Plaintiffs and the Plaintiff Class with such meal periods without duty,

4   notwithstanding the fact that Plaintiffs and the Plaintiff Class had not waived their right to the

5   same. Thus, Defendants failed to provide Plaintiffs and the Plaintiff Class with meal periods

6   required by California Labor Code sections 226.7, 512, 516 and California IWC Wage Order, No.

7   9, section 11 and categorically failed to pay any and all meal period premium wages due.

8   206.   Plaintiffs and the Plaintiff Class seek damages pursuant to California Labor Code

9   ' 226.7(b) and California IWC Wage Order, number 9 section 11(D), in the amount of one

10   additional hour of pay (premium wages) at the regular rate for each work day that the meal period

11   is/was not provided to Plaintiffs and any member of the Plaintiff Class, the cumulative sum of

12   which is to be determined at trial.

13   207.   Plaintiffs and the Plaintiff Class further seek penalties pursuant to California Labor

14   Code ' 558(a) for Defendants' failure to provide such meal periods.

15   208.   Plaintiffs and the Plaintiff Class seek prejudgment interest on all amounts recovered

16   herein pursuant to California Labor Code sections 218.6, 1194(a) and the California Civil Code

17   sections 3287(b) and 3289.

18   209.   Plaintiffs and the other Class members also request relief as described below.

19   <u>**TENTH CAUSE OF ACTION**</u>

20   **FAILURE TO PROVIDE REST PERIODS**

21   **(On Behalf of Plaintiffs and the Putative Class)**

22   **(Against All Defendants)**

23   210.   Plaintiffs hereby incorporate by reference each and every one of the allegations

24   contained in the preceding paragraphs as if the same were fully set forth herein.

25   211.   Plaintiffs are informed and believe, and thereon allege, that Plaintiffs and the Plaintiff

26   Class were entitled to a paid rest period of not less than ten (10) minutes without duty for each and

27   every four (4) hours worked during the workday.

28   212.   Nevertheless, Plaintiffs are informed and believe, and thereon allege, that Defendants

routinely failed to provide Plaintiffs and the Plaintiff Class with such paid rest periods without duty, notwithstanding the fact that Plaintiffs and the Plaintiff Class had not waived their right to the same. Thus, Defendants failed to provide Plaintiffs and the Plaintiff Class with rest periods required by California Labor Code sections 226.7, 512, and 516, California IWC Wage Order, No. 9 section 12 and categorically failed to pay any and all rest period premium wages due.

213.    Plaintiffs and the Plaintiff Class seek damages pursuant to California Labor Code section 226.7(b) and California IWC Wage Order, number 9 section 12(B), in the amount of one additional hour of pay (premium wages) at the regular rate for each work day that the rest period is/was not provided to Plaintiffs and any member of the Plaintiff Class, the cumulative sum of which is to be determined at trial.

214.    Plaintiffs and the Plaintiff Class further seek penalties pursuant to California Labor Code section 558(a) for Defendants' failure to provide such rest periods.

215.    Plaintiffs and the Plaintiff Class seek prejudgment interest on all amounts recovered herein pursuant to California Labor Code sections 218.6 and 1194(a) and the California Civil Code sections 3287(b) and 3289.

216.    Plaintiffs and the other Class members also request relief as described below.

## ELEVENTH CAUSE OF ACTION

### FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS

#### (On Behalf of Plaintiffs and the Putative Class)

#### (Against All Defendants)

217.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

218.    Defendants paid Plaintiffs and the Plaintiff Class on a piece-rate basis, typically on an activity and per-mile basis, with some variation thereon. However, as noted above, Defendants failed to pay Plaintiffs and the Plaintiff Class for all hours worked by Plaintiffs and the Plaintiff Class during the relevant time period.

219.    California Labor Code section 226(a) and California IWC Wage Order, number 9, section 7(B) require employers to furnish each employee with a statement itemizing, among other

things, the total hours worked by the employee, on a semi-monthly basis or at the time of each payment of wages.

220.    Defendants knowingly and intentionally failed to furnish Plaintiffs and members of the Plaintiff Class with timely, itemized statements showing the total hours worked, as required by California Labor Code section 226(a) and California IWC Wage Order, No. 9 section 7(B).

221.    Plaintiffs are informed and believe, and thereon allege, that Defendants knowingly and intentionally failed to furnish Plaintiffs and the Plaintiff Class with timely, itemized statements showing (a) total hours worked, (b) gross wages earned, (c) all deductions, and/or (d) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate by each respective individual and/or (e) all applicable piece rates.

222.    Plaintiffs are informed and believe, and thereon allege, that Defendants did not maintain accurate business records pertaining to the total hours worked for Defendants by Plaintiffs and the Plaintiff Class.

223.    As a result of not having kept accurate records, Plaintiffs and the Plaintiff Class suffered injuries in the form of confusion over whether they received all wages owed to them, and difficulty and expense in reconstructing pay records in addition to other injuries which may come to light during the discovery process.

224.    Plaintiffs and the Plaintiff Class herein seek damages and penalties pursuant to California Labor Code section 226(e) for Defendants violations of California Labor Code section 226(a).

225.    Plaintiffs and the Plaintiff Class further seek preliminary and permanent injunctive relief and an award of reasonable attorneys' fees and costs pursuant to California Labor Code section 226(h).

226.    Plaintiffs and the Plaintiff Class also request relief as described below.

/ / /

/ / /

/ / /

**TWELFTH CAUSE OF ACTION**

**FOR WAITING TIME PENALTIES**

**(On Behalf of Plaintiffs and the Putative Class )**

**(Against All Defendants)**

227.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

228.    California Labor Code section 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by California Labor Code section 201 or 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to thirty (30) work days.

229.    Plaintiffs are informed and believe, and thereon allege, that Defendants, in violation of California Labor Code section 203, consistently and willfully failed to timely pay all Class members all wages due and owing to said class members at the time of termination of employment, including basic minimum wages and premium pay due for meal period and rest period wages as set forth hereinabove.

230.    Plaintiffs seek the penalties to which they and the Class are entitled pursuant to California Labor Code section 203, in the amount of each Class members' daily wage multiplied by thirty (30) days, the exact amount of which is to be determined at trial.

**THIRTEENTH CAUSE OF ACTION**

**CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ*.**

**(On Behalf of Plaintiffs and the Putative Class)**

**(Against All Defendants)**

231.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

232.    Defendants, and each of them, committed acts of unfair competition as defined by California Business and Professions Code section 17200, *et. seq.*, by engaging in the following unlawful, unfair and fraudulent business acts and practices in the State of California:

    a.    Misrepresenting to Plaintiffs and the Plaintiff Class the true nature of their

employment status.

b.  Intentionally misclassifying Plaintiffs and the Plaintiff Class as independent contractors.

c.  Intentionally and improperly labelling Plaintiffs and the Plaintiff Class as independent contractors when, in fact, they were treated employees.

d.  Failing to pay Unemployment Insurance taxes as required by the California Unemployment Insurance Code section 976;

e.  Failing to pay Employment Training Fund taxes as required by the California Unemployment Insurance Code section 976.6;

f.  Failing to withhold State Disability Insurance taxes as required by the California Unemployment Insurance Code section 984;

g.  Failing to withhold State income taxes as required by the California Unemployment Insurance Code section 13020;

h.  Failing to provide workers' compensation as required by California Labor Code section 3700;

i.  Failing to indemnify Plaintiffs and the Plaintiff Class for employment-related business expenses and losses;

j.  Improperly and unlawfully making deductions from Plaintiffs' and the Plaintiff Class' compensation for work-related expenses and losses not attributable to Plaintiffs' and  the Plaintiff Class' dishonest or willful act or gross negligence, as described above;

k.  Charging drivers money for load assignments;

l.  Entering into unilateral usurious contracts with drivers so that drivers could finance Defendants' fleet;

m. Reporting to the credit agencies of money owed under defaulted contracts when Defendants had and/or were fully mitigating their damages;

n.  Failing to comply with written lease requirements pursuant to 49 C.F.R. 376.12, including but not limited to sections 376(e), 376(j)(3) and 376(k)(3);

Case No. 2:15-cv-002228-SHM-tmp
**THIRD AMENDED COMPLAINT**

o.  Coercing and/or compelling Plaintiffs and the Plaintiff Class to purchase necessary equipment from Defendants and allied companies;

p.  Failing to pay minimum wage compensation to Plaintiffs and the Plaintiff Class for all hours worked;

q.  Failing to pay minimum wage compensation to Plaintiffs and the Plaintiff Class for actual miles driven;

r.  Failing to pay wages at the designated rate to Plaintiffs and the Plaintiff Class for all hours worked;

s.  Failing to pay wages at the designated rate to Plaintiffs and the Plaintiff Class for actual miles driven;

t.  Knowingly accepting and retaining a benefit conferred upon Defendants by Plaintiffs and the Plaintiff Class;

u.  Failing and refusing to provide meal periods to Plaintiffs and the Plaintiff Class;

v.  Failing and refusing to provide rest periods to Plaintiffs and the Plaintiff Class;

w.  Failing and refusing to provide accurate itemized wage statements to Plaintiffs and the Plaintiff Class; and

x.  Failing and refusing to maintain payroll records showing the actual hours worked each day by Plaintiffs and the Plaintiff Class.

233.  As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent acts and practices described herein, Defendants have received and continue to hold ill-gotten gains belonging to Plaintiffs and the Plaintiff Class. As a direct and proximate result of Defendants' unlawful business practices, Plaintiffs and the Plaintiff Class have suffered economic injuries including, but not limited to, out-of-pocket unreimbursed business expenses, unlawful deductions from compensation, loss of minimum wage compensation, loss of agreed wages, loss of compensation for missed meal and rest periods, and penalties.

234.  Through Defendants' use of such unlawful, unfair, and/or fraudulent acts and practices, Defendants have gained an unfair advantage over Defendants' competitors.

235.  Plaintiffs and the Plaintiff Class seek full restitution on account of the economic

injuries they have suffered, along with disgorgement of ill-gotten gains from Defendants as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unlawful, unfair and fraudulent business practices complained of herein.

236.    Plaintiffs further seek disgorgement of profits from the sale/leases of trucks to putative class members.

237.    Plaintiffs further seek injunctive relief to repair the credit of those Drivers as to whom Defendants made negative credit reports based on the lease/purchase of trucks through Defendants and/or Defendant's third party providers.

238.    Plaintiffs and the Plaintiff Class seek appointment of a receiver, as necessary, to oversee said restitution, including all wages earned and unpaid, including interest thereon.

239.    The acts complained of herein occurred, at least in part, within four years preceding the first-filed Complaint.

240.    Plaintiffs and the Plaintiff Class also request relief as described below.

<u>**FOURTEENTH CAUSE OF ACTION**</u>

**REIMBURSEMENT OF BUSINESS EXPENSES**

**(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

**(Against Defendant All Defendants)**

241.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

242.    California Labor Code section 2802(a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…."

243.    Within the three (3) years preceding the filing of this lawsuit, Plaintiff Salvador Robles was employed by Defendants within the State of California.   Defendants were required to indemnify and reimburse Plaintiff Salvador Robles for all expenditures or losses incurred in direct consequence of the discharge of his duties, but failed to do so as required by the laws and

1  regulations of the State of California. Labor Code section 2802 prohibits employers from passing

2  the ordinary business expenses and losses of the employer onto the employee.

3      244.    Defendants have violated California Labor Code section 2802 and California IWC

4  Wage Order, number 9, section 8 by unlawfully taking deductions from Plaintiff Salvador Robles'

5  compensation to cover numerous ordinary business expenses of Defendants including, but not

6  limited to, costs of owning, operating and repairing necessary equipment, overweight tickets and

7  other fines, claims for loss or damaged cargo, property damage and bodily injury claims, fuel and

8  "service claims" granted to customers.

9      245.    Because Defendants took unlawful deductions from Plaintiff Salvador Robles'

10  compensation, they are liable to Plaintiff Salvador Robles for the compensation that should have

11  been paid but for the unlawful deductions, pursuant to California Labor Code, sections 221, 223,

12  and 400-410, and California IWC Wage Order, number 9 section 8.

13      246.    By unlawfully deducting wages and failing to pay Plaintiff Salvador Robles,

14  Defendants are also liable for penalties, reasonable attorneys' fees, and costs under California

15  Labor Code sections 218.5 and 1194.

16      247.    Plaintiff Salvador Robles seeks reimbursement for business expenses unlawfully

17  deducted from his compensation according to proof, interest, penalties, attorneys' fees, and costs

18  against Defendants in a sum provided by the California Labor Code and/or other statutes.

19      248.    Plaintiffs also request relief as described below.

20                        **FIFTEENTH CAUSE OF ACTION**

21          **FAILURE TO PAY MINIMUM WAGE FOR ALL HOURS WORKED**

22     **(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

23                          **(Against All Defendants)**

24      249.    Plaintiffs hereby incorporate by reference each and every one of the allegations

25  contained in the preceding paragraphs as if the same were fully set forth herein.

26      250.    Pursuant to California Labor Code sections 1182.12, 1194 and 1197 and California

27  IWC Wage Order, number 9 section 4, Plaintiff Salvador Robles may bring a civil action for

28  unpaid minimum wages directly against an employer.

251.    At all relevant times herein, California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9, section 4, provided for payment of state-law minimum wages at the rate described therein.

252.    Defendants' compensation scheme did not fairly compensate Plaintiff Salvador Robles for Waiting Time, or other activities including but not limited to pre and post trip inspections, fueling trucks, filling out paperwork, and waiting for dispatch.  As a result, Defendants suffered or permitted Plaintiff Salvador Robles to perform work without compensation, while subject to Defendants' control.

253.    By failing to maintain adequate time records as required by California Labor Code section 1174(d) and California IWC Wage Order, number 9 section 7(A), Defendants have made it difficult to calculate the minimum wage compensation due Plaintiff Salvador Robles.

254.    Defendants owe Plaintiff Salvador Robles minimum wages and liquidated damages pursuant to California Labor Code sections 1182.12, 1194, 1194.2 and 1197, California IWC Wage Order, number 9, section 4, in amounts to be determined at trial during the relevant time period.

255.    Plaintiff Salvador Robles requests payment of unpaid minimum wages due in amounts to be determined at trial, interest, attorneys' fees and costs, against Defendants in a sum as provided by the California Labor Code and/or other statutes.

256.    Plaintiffs also request relief as described below.

## SIXTEENTH CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE FOR TIME SPENT DRIVING ACTUAL MILES**

**(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

**(Against All Defendants)**

257.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

258.    Pursuant to California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9 section 4, Plaintiff Salvador Robles may bring a civil action for unpaid minimum wages directly against an employer.

259.   At all relevant times herein, the applicable California Labor Code sections and California IWC Wage Order referenced herein applied to Plaintiff Salvador Robles.

260.   At all relevant times herein, California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, number 9, section 4, provided for payment of state-law minimum wages at the rate described therein.

261.   Defendants engaged Plaintiff Salvador Robles to drive trucks in the course and scope of employment. Defendants' compensation scheme included, among others, a mileage-based system.  However, Defendants' compensation schemes only covered wages for a portion of the miles actually driven based on the HHMG Shortest Route Estimates. As a result, Defendants failed to pay wages to Plaintiff Salvador Robles for the time he actually spent driving actual miles.

262.   With respect to all actual miles actually driven, Defendants have intentionally and improperly failed to make payment of minimum wages to Plaintiff Salvador Robles in violation of the California Labor Code, applicable regulations and California IWC Wage Order, number 9.

263.   Defendants owe Plaintiff Salvador Robles minimum wages and liquidated damages pursuant to California Labor Code sections 1182.12, 1194 and 1197 and California IWC Wage Order, No. 9, section 4, due in amounts to be determined at trial within the relevant time period.

264.   Plaintiff Salvador Robles requests payment of unpaid minimum wages due in amounts to be determined at trial, plus interest, attorneys' fees and costs, against Defendants in a sum as provided by the California Labor Code and/or other statutes.

265.   Plaintiffs also request relief as described below.

## SEVENTEENTH CAUSE OF ACTION

### PAYMENT OF WAGE BELOW DESIGNATED RATE FOR ALL HOURS WORKED

#### (On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)

#### (Against All Defendants)

266.   Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

267.   At all relevant times herein, the applicable California Labor Code sections referenced herein applied to Plaintiff Salvador Robles employed with Defendants.

268.   At all relevant times herein, California Labor Code section 223 provided "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

269.   Defendants' compensation scheme purported to compensate Plaintiff Salvador Robles for all hours worked.  In reality, Defendants suffered or permitted Plaintiff Salvador Robles to work portions of his day without compensation, while subject to Defendants' control.

270.   California law requires employers to pay wages in accordance with a designated wage scale.  Nevertheless, Defendants paid less than minimum wages and less than the agreed upon compensation owed to Plaintiff Salvador Robles while purporting to pay the designated wage scale. As a result, Defendants' conduct violates California Labor Code sections 221 and 223.

271.   Defendants owed and still owe Plaintiff Salvador Robles wages pursuant to the California Labor Code in amounts to be determined at trial for the hours worked during the relevant time period.

272.   Plaintiff Salvador Robles requests payment of unpaid wages below the designated rate in amounts to be determined at trial, plus interest, attorneys' fees and costs, against Defendants in a sum as provided by the Labor Code and/or other statutes.

273.   Plaintiffs also request relief as described below.

## EIGHTEENTH CAUSE OF ACTION

### PAYMENT OF WAGE BELOW DESIGNATED RATE

### FOR TIME SPENT DRIVING ACTUAL MILES

**(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

**(Against All Defendants)**

274.   Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

275.   At all relevant times herein, the applicable California Labor Code sections referenced herein applied to Plaintiff Salvador Robles.

276.   Pursuant to California Labor Code section 223, it is unlawful for Defendants to purport to pay the wage designated by statute or by contract while actually paying a lower wage.

277.   Defendants engaged Plaintiff Salvador Robles to drive trucks in the course and scope of employment. Defendants' compensation scheme included, among others, a mileage-based system.  However, instead of compensating Plaintiff Salvador Robles for all miles actually driven, Defendants only paid wages based on the HHMG Shortest Route Estimates. Consequently, Defendants failed to pay wages to Plaintiff Salvador Robles for the time he actually spent driving the extra miles.

278.   With respect to all miles actually driven, Defendants have intentionally and improperly failed to make payment of wages to Plaintiff Salvador Robles in accordance with rates as designated by statute and/or contract. Defendants' conduct violates California Labor Code sections 221 and 223.

279.   Defendants owed and still owe Plaintiff Salvador Robles wages pursuant to the California Labor Code in amounts to be determined at trial for the hours worked during the relevant time period.

280.   Plaintiff Salvador Robles requests payment of unpaid wages above the designated rate in amounts to be determined at trial, plus interest, attorneys' fees and costs, against Defendants in a sum as provided by the Labor Code and/or other statutes.

281.   Plaintiffs also request relief as described below.

## NINETEENTH CAUSE OF ACTION

### QUANTUM MERUIT/UNJUST ENRICHMENT

**(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

**(Against All Defendants)**

282.   Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

283.   Plaintiff Salvador Robles conferred a benefit upon Defendants by working on their behalf without compensation, including but not limited to, time spent driving miles for which Plaintiff Salvador Robles was not compensated and working hours for which he was not compensated.

284.   Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff

1  Salvador Robles.

2  285.    Defendants accepted and retained the benefit under circumstances as to make it

3  inequitable for Defendants to retain the benefit without payment of its value.

4  286.    Plaintiffs also request relief as described below.

5  **TWENTIETH CAUSE OF ACTION**

6  **FAILURE TO PROVIDE MEAL PERIODS**

7  **(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

8  **(Against All Defendants)**

9  287.    Plaintiffs hereby incorporate by reference each and every one of the allegations

10  contained in the preceding paragraphs as if the same were fully set forth herein.

11  288.    Plaintiff Salvador Robles regularly worked more than five (5) hours per shift and was

12  entitled to a meal period of not less than thirty (30) minutes without duty.  Plaintiff Salvador

13  Robles regularly worked more than ten (10) hours per shift and was entitled to a second meal

14  period of not less than thirty (30) minutes without duty.

15  289.    Nevertheless, Defendants routinely failed to provide Plaintiff Salvador Robles with

16  such meal periods without duty, notwithstanding the fact that Plaintiff Salvador Robles had not

17  waived his right to the same. Thus, Defendants failed to provide Plaintiff Salvador Robles with

18  meal periods required by California Labor Code sections 226.7, 512, 516 and California IWC

19  Wage Order, number 9, section 11 and categorically failed to pay any and all meal period premium

20  wages due.

21  290.    Plaintiff Salvador Robles seeks damages pursuant to California Labor Code

22  section 226.7(b) and California IWC Wage Order, number 9, section 11(D), in the amount of one

23  additional hour of pay at the regular rate for each work day that the meal period is/was not

24  provided to Plaintiff, the cumulative sum of which is to be determined at trial.

25  291.    Plaintiff Salvador Robles further seeks penalties pursuant to California Labor Code

26  section 558(a) for Defendants' failure to provide such meal periods.

27  292.    Plaintiff Salvador Robles seeks prejudgment interest on all amounts recovered herein

28  pursuant to California Labor Code sections 218.6, 1194(a) and the California Civil Code sections

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

1    3287(b) and 3289.

2         293.    Plaintiffs also request relief as described below.

3                        **TWENTY-FIRST CAUSE OF ACTION**

4                        **FAILURE TO PROVIDE REST PERIODS**

5    **(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

6                              **(Against All Defendants)**

7         294.    Plaintiffs hereby incorporate by reference each and every one of the allegations

8    contained in the preceding paragraphs as if the same were fully set forth herein.

9         295.    Plaintiff Salvador Robles was entitled to a paid rest period of not less than ten (10)

10   minutes without duty for each and every four (4) hours worked during the workday.

11        296.    Nevertheless, Defendants routinely failed to provide Plaintiff Salvador Robles with

12   such paid rest periods without duty, notwithstanding the fact that Plaintiff Salvador Robles had not

13   waived his right to the same. Thus, Defendants failed to provide Plaintiff with rest periods

14   required by California Labor Code sections 226.7, 512, and 516, California IWC Wage Order, No.

15   9 section 12 and categorically failed to pay any and all meal period premium wages due.

16        297.    Plaintiff Salvador Robles seeks damages pursuant to California Labor Code section

17   226.7(b) and California IWC Wage Order, No. 9 section 12(B), in the amount of one additional

18   hour of pay at the regular rate for each work day that the rest period is/was not provided to

19   Plaintiff Salvador Robles, the cumulative sum of which is to be determined at trial.

20        298.    Plaintiff Salvador Robles further seeks penalties pursuant to California Labor Code

21   section 558(a) for Defendants' failure to provide such rest periods.

22        299.    Plaintiff Salvador Robles seeks prejudgment interest on all amounts recovered herein

23   pursuant to California Labor Code sections 218.6 and 1194(a) and the California Civil Code

24   sections 3287(b) and 3289.

25        300.    Plaintiffs also request relief as described below.

26   / / /

27   / / /

28   / / /

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

### **TWENTY-SECOND CAUSE OF ACTION**

**FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

**(Against All Defendants)**

301.   Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

302.   Defendants paid Plaintiff Salvador Robles on a piece-rate basis, typically on an activity and per-mile basis, with some variation thereon.  However, as noted above, Defendants failed to pay Plaintiff Salvador Robles for all hours worked by Plaintiff Salvador Robles during the relevant time period.

303.   California Labor Code section 226(a) and California IWC Wage Order, No. 9, section 7(B) require employers to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee, on a semi-monthly basis or at the time of each payment of wages.

304.   Plaintiff Salvador Robles is informed and believes, and thereon alleges that Defendants knowingly and intentionally failed to furnish Plaintiff Salvador Robles with timely, itemized statements showing the total hours worked, as required by California Labor Code section 226(a) and California IWC Wage Order, No. 9, section 7(B).

305.   Plaintiff Salvador Robles is informed and believes, and thereon alleges that Defendants knowingly and intentionally failed to furnish Plaintiff Salvador Robles with timely, itemized statements showing (a) total hours worked, (b) gross wages earned, (c) all deductions; (d) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate by each respective individual and/or piece rates.

306.   Plaintiff Salvador Robles is informed and believes, and thereon alleges, that Defendants did not maintain accurate business records pertaining to the total hours worked for Defendants by Plaintiff Salvador Robles.

307.   As a result of not having kept accurate records, Plaintiff Salvador Robles suffered injuries in the form of confusion over whether he received all wages owed to him, and difficulty

and expense in reconstructing pay records in addition to other injuries which may come to light during the discovery process.

308.    Plaintiff Salvador Robles herein seeks damages and penalties pursuant to California Labor Code section 226(e) for Defendants violations of California Labor Code section 226(a).

309.    Plaintiffs also request relief as described below.

**TWENTY-THIRD CAUSE OF ACTION**

**FOR WAITING TIME PENALTIES**

**(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

**(Against All Defendants)**

310.    Plaintiffs hereby incorporate by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

311.    California Labor Code section 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by California Labor Code section 201 or 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to thirty (30) work days.

312.    Plaintiff Salvador Robles is informed and believes, and thereon alleges, that Defendants, in violation of California Labor Code section 203, willfully failed to timely pay him all wages due and owing at the time of termination of employment, including basic minimum wages and premium pay due for meal period and rest period wages as set forth hereinabove.

313.    Plaintiff Salvador Robles seeks the penalties to which he is entitled pursuant to California Labor Code section 203, in the amount of his daily wage multiplied by thirty (30) days, the exact amount of which is to be determined at trial.

314.    Plaintiffs also request relief as described below.

**TWENTY-FOURTH CAUSE OF ACTION**

**CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ*.**

**(On Behalf Of Plaintiff Salvador Robles, Individually, as a Former Employee)**

**(Against All Defendants)**

315.    Plaintiffs hereby incorporate by reference each and every one of the allegations

67

1   contained in the preceding paragraphs as if the same were fully set forth herein.

2       316.   Within the four (4) years preceding Plaintiff Salvador Robles' first-filed Complaint,

3   Defendants, and each of them, committed acts of unfair competition as defined by California

4   Business and Professions Code section 17200, *et. seq.*, by engaging in the following unlawful,

5   unfair and fraudulent business acts and practices in the State of California:

6       a.  Failing to indemnify Plaintiff Salvador Robles for employment-related business

7           expenses and losses;

8       b.  Improperly and unlawfully making deductions from Plaintiff Salvador Robles'

9           compensation for work-related expenses and losses not attributable to Plaintiff's

10          dishonest or willful act or gross negligence, as described above;

11      c.  Coercing and/or compelling Plaintiff Salvador Robles to purchase necessary

12          equipment from Defendants and allied companies;

13      d.  Failing to pay minimum wage compensation to Plaintiff Salvador Robles for all

14          hours worked;

15      e.  Failing to pay minimum wage compensation to Plaintiff Salvador Robles for actual

16          miles driven;

17      f.  Failing to pay wages at the designated rate to Plaintiff Salvador Robles for all hours

18          worked;

19      g.  Failing to pay wages at the designated rate to Plaintiff Salvador Robles for actual

20          miles driven;

21      h.  Knowingly accepting and retaining a benefit conferred upon Defendants by

22          Plaintiff Salvador Robles;

23      i.  Failing and refusing to provide meal periods to Plaintiff Salvador Robles;

24      j.  Failing and refusing to provide rest periods to Plaintiff Salvador Robles;

25      k.  Failing and refusing to provide accurate itemized wage statements to Plaintiff

26          Salvador Robles; and

27      l.  Failing and refusing to maintain payroll records showing the actual hours worked

28          each day by Plaintiff Salvador Robles.

317.     As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent acts and practices described herein, Defendants have received and continue to hold ill-gotten gains belonging to Plaintiff Salvador Robles. As a direct and proximate result of Defendants' unlawful business practices, Plaintiff Salvador Robles has suffered economic injuries including, but not limited to, unreimbursed out-of-pocket business expenses, unlawful deductions from compensation, loss of minimum wage compensation, loss of agreed wages, loss of compensation for missed meal and rest periods, and waiting time penalties.

318.     Through Defendants' use of such unlawful, unfair, and/or fraudulent acts and practices, Defendants have gained an unfair advantage over Defendants' competitors.

319.     Plaintiff Salvador Robles seeks full restitution on account of the economic injuries he has suffered, along with disgorgement of ill-gotten gains from Defendants as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unlawful, unfair and fraudulent business practices complained of herein.

320.     Plaintiff Salvador Robles seeks appointment of a receiver, as necessary, to oversee said restitution, including all wages earned and unpaid, including interest thereon.

321.     Plaintiffs also request relief as described below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays as follows:

    a.  An order certifying the Class herein, appointing the named Plaintiffs as the class representatives of all others similarly situated and appointing counsel for the named Plaintiffs as counsel for members of the Class;

    b.  An order declaring the settlement releases obtained by Defendants as void and allowing funds already paid to remain as a credit against future recovery in this case;

    c.  An order declaring that Defendants misclassified Plaintiffs and the Plaintiff Class as "independent contractors," when in fact they were Defendants' employees;

    d.  An order awarding Plaintiffs and the Plaintiff Class all wages owed, all

1   unreimbursed business expenses, all meal and rest break premiums owed, plus all

2   penalties and  compensatory damages;

3   e.   A temporary, preliminary and/or permanent order for injunctive relief requiring

4   Defendants to: (1) comply with Written Lease requirements pursuant to 49 C.F.R.

5   376.12; (2) discontinue from engaging in the acts complained of herein;

6   (3) undertake an accounting under administration of Plaintiff and/or the receiver

7   and subject to court review, to determine the amount to be returned by Defendants,

8   and the amounts to be refunded to Plaintiffs and the Plaintiff Class owed monies by

9   Defendants; (4) repair the credit of putative class members who purchased/leased

10   trucks through Defendants or Defendants' third party vendors.

11   f.   An order requiring imposition of a constructive trust and/or disgorgement of

12   Defendants' ill-gotten gains to pay restitution to the Plaintiffs and the Plaintiff

13   Class and to restore to the Plaintiffs and the Plaintiff Class all funds acquired by

14   means of any act or practice declared by this Court to be an unlawful, fraudulent or

15   unfair business act or practice, a violation of laws, statutes or regulations, or

16   constituting unfair competition;

17   g.   Pre-judgment and post-judgment interest;

18   h.   Reasonable attorneys' fees pursuant to the California Labor Code sections 1194 and

19   2802 and penalties;

20   i.   Costs of this suit; and

21   j.   Such other and further relief as the Court may deem necessary or appropriate.

22

23   March 14, 2022                             **MARLIN & SALTZMAN, LLP**

24                                             By:  _/s/  Stanley D. Saltzman_

25                                                  Stanley D. Saltzman, Esq.
                                                  Attorneys for Plaintiffs

26

27

28

1

**DEMAND FOR JURY TRIAL**

2         Plaintiff hereby demands trial of Plaintiff's and the Plaintiff Class' claims by jury to the

3    extent authorized by law.

4

5    March 14, 2022                          **MARLIN & SALTZMAN, LLP**

6                                            By:  _/s/  Stanley D. Saltzman_

7                                                Stanley D. Saltzman, Esq.
                                                 Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Case No. 2:15-cv-002228-SHM-tmp**
**THIRD AMENDED COMPLAINT**

1

## **CERTIFICATE OF SERVICE**

2       I, Stanley D. Saltzman, certify that I caused a true and correct copy of the foregoing

3 THIRD AMENDED COMPLAINT to be served upon counsel of record, via the Court's CM/ECF

4 system, on March 16, 2022.

5

6                           s/ Stanley D. Saltzman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:15-cv-002228-SHM-tmp
**THIRD AMENDED COMPLAINT**